BRIAN IRION, ESQ. (SBN #119865)
LAW OFFICES OF BRIAN IRION
611 Veterans Blvd., Suite 209
Redwood City, California  94063
Tel: 650.363.2600
Fax: 650.363.2606
birion@thedesq.com

Attorneys for Plaintiff Jiajie Zhu

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JIAJIE ZHU, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>JING LI, an individual; and DONG CHEN, an<br>individual,<br><br>    Defendants | Case No. 4:19-cv-02534 KAW<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES:<br><br>1.  Intentional Misrepresentation;<br>2.  Negligent Misrepresentation;<br>3.  Breach of Fiduciary Duty;<br>4.  Breach of Contract;<br>5.  Breach of Guarantee;<br>6.  Civil Conspiracy;<br>7.  Accounting<br><br>DEMAND FOR JURY TRIAL |

Comes now JIAJIE ZHU and alleges as follows:

**PARTIES**

1)      Plaintiff JIAJIE ZHU ("Zhu" or "Plaintiff") is an individual.  Plaintiff is a citizen of China living in Shanghai, China and is not lawfully admitted for permanent residence in the United States and domiciled in California.

2)      Defendant JING LI ("Li") is an individual.  Plaintiff is informed and believes and based thereon alleges that Li is either a citizen of the United States or lawfully admitted for permanent

residence in the United States and is domiciled and at all relevant times has been domiciled in the county of San Mateo, California.

3)   Defendant DONG CHEN ("Chen") is an individual.  Plaintiff is informed and believes and based thereon alleges that Chen is either a citizen of the United States or lawfully admitted for permanent residence in the United States and is domiciled and at all relevant times has been domiciled in the county of San Mateo, California.

4)   Plaintiff is informed and believes and based thereon allege that Li and Chen are married and at all relevant times have been married and living in San Mateo County, California.

5)   Plaintiff is informed and believes and based thereon alleges that at all times alleged herein, defendants Chen and Li were agents and co-conspirators, acting in concert and with knowledge and intent  according to a plan to deprive Plaintiff of information and his profits in a joint enterprise, and instead in a manner designed to betray him as described below.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

6)   This court has jurisdiction pursuant to 28 USC § 1332 as it involves citizens of different states and the amount in controversy exceeds $75,000 exclusive of fees and costs.

7)   Venue is appropriate pursuant to 28 USC § 1391 in that (a) defendants Li and Chen are domiciled in California in San Mateo County and plaintiff Zhu is not, and in that (b) a substantial part of the events and omissions giving rise to the claims stated below occurred in San Mateo County.

8)   The San Francisco Division is proper under ND Cal. Loc. Rule 3-2(d) in that a substantial portion of the events giving rise to the claims below occurred in San Mateo County.

## FACTS

9)   In or around October of 2012, plaintiff, defendant Li and a third person, Xin Guan, formed a limited liability company based in Menlo Park, California called "Teetex, LLC" ("Teetex"), with plaintiff owning 60% of the membership interest, Li owning 30% of the membership interest, and Guan owning 10% of the membership interest, and with defendant Li acting as the manager.

10)   Teetex is a California limited liability company engaged in the business of importing textiles from China for sale to wholesale businesses in the United States.

First Amended Complaint                    Page 2

11)     Plaintiff is informed and believes and based thereon alleges that at all relevant times, Chen acted in a managerial capacity along with Li in operating Teetex.

12)     In or around August of 2014, Guan transferred his interest in Teetex to plaintiff Zhu and Zhu thereby became a 70% owner of Teetex.

13)     In or around Spring of 2016, plaintiff set about as the 70% owner of Teetex to become manager and in April of 2016 called a meeting of the members to appoint himself as manager. Defendant Li did not attend the meeting and did not acknowledge being replaced as manager.

14)     Plaintiff thereafter obtained a copy of Teetex' tax returns for the period  2012-2015 and reviewed them.  According to the 2015 US federal tax return, Teetex had a net income before tax of $204,261.

15)     Plaintiff also notified Teetex' bank that he was the new manager and requested copies of statements and to replace defendant Li as signatory on the account.  Defendants refused to accept having plaintiff as the manager and provided counter-instructions to the bank, rejecting plaintiff as manager.

16)     Defendant Chen told plaintiff Zhu that if he continued to attempt to displace defendant Li, they would force the dispute into litigation or arbitration, and the relative harm to Zhu would be greater. As a result of the discord between members of Teetex, the bank froze the account and informed both plaintiff and defendants of its intentions to interplead the funds.

17)     In order to avoid a crippling of the business of Teetex, Zhu decided to begin negotiations with defendant Chen to sell Zhu's70% interest in Teetex to Li rather than engage in litigation that likely would harm him more than Li if Teetex were to be destroyed in the process.

18)     During negotiations, defendant Chen orally reaffirmed to plaintiff Zhu that Teetex's income before taxes for calendar year 2015 was approximately $204,000. Based on a rounded net income before tax of roughly $200,000, Zhu on his own behalf and Chen on behalf of Li agreed to have Zhu's 70% interest in Teetex sold to Li at a 5.375 multiple of $200,000, or $1,075,000 valuation, with Zhu's 70% interest being valued at $752,500, plus Zhu's share of undistributed profits through June 6, 2016.

19)     A memorandum of agreement in Chinese was executed by the parties in June of 2016 and a final agreement was later drafted.

20)     On or about August 10, 2016, plaintiff Zhu and defendants Li and Chen entered into and bound themselves to definitive documents of sale, including a "Sale of Teetex, LLC Interest Agreement" ("PSA") and related documents including personal guarantee of defendants and schedules related to the sale.  A true and correct copy of these documents (including English translation) is attached hereto as **Exhibit 1**.

21)     Under the terms of the PSA, plaintiff Zhu was to be paid $752,500 according to the schedule in section 1.2.3 thereof, plus Zhu's share of undistributed profits and losses accumulated as of June 7, 2016 by June 30, 2018 as provided in section 1.2.1 thereof.

22)     According to section 4.2 of the PSA, plaintiff was to withdraw as a member as of June 7, 2016, but was to have access to all records, documents and materials of Teetex including rights to access bank accounts until all of defendant Li's obligations under the PSA were completed.

23)     On or around June 20, 2017, plaintiff received Teetex's balance sheet and income statement for the first six months of 2016 (through June 6, 2017) from defendant Chen.  On sales of over $5.3 million for the first six months of 2016, the purported net income was only $41,369.

24)     It appeared to plaintiff that  expenses were increased compared to prior years.  Plaintiff attempted to log in to the bank accounts but found his authority to do so had been revoked by defendant Chen.

25)     Plaintiff's attorney then asked defendants for copies of Teetex's company records and documents.  Although defendant Chen purported to arrange for plaintiff to review the records at Teetex' company offices on September 4, 2017, that permission was revoked when plaintiff appeared for the inspection with his attorney.

26)     Sometime in early 2018, plaintiff Zhu found an email dated February 3, 2016 from defendant Chen stating that the actual profit of Teetex for calendar year 2015 was actually about $750,000, not $204,000 as had been represented to plaintiff and reported on tax returns.  Moreover, in that email thread, plaintiff first learned that defendant Chen had formulated a plan to create fake

invoices as expenses to another entity instead of paying plaintiff his share of 2015 undistributed profits directly.

27)   Through these events, plaintiff learned that defendants Chen and Li had deflated the value of Teetex and that as a result, plaintiff Zhu had sold his interest in Teetex for less than its worth.

28)   Based on an income before taxes of $750,000 instead of $200,000, plaintiff's 70% interest in Teetex was worth about 3.75 times as much as he had sold it for, or about $2,069,375 more than the price paid by defendants for plaintiff's share in Teetex.

29)   In this manner, and through these events, plaintiff also learned that expenses had been inflated and money diverted to other entities which had the effect of decreasing undistributed profits for the first part of 2016 to which plaintiff was entitled under the PSA, in an amount currently unknown.

30)   Defendants also failed to pay to plaintiff Zhu his 70% of undistributed profits as of June 7, 2016 in the purported amount of $129,306 (not accounting for the inflated expenses).  In accord with section 1.2.4 of the PSA, plaintiff provided notice of the default in writing, a true and correct copy of which is attached hereto as **Exhibit 2**.

31)   Defendant Chen has failed and refused to pay the amount stated in Exhibit 2 or any amount at all.

32)   On information and belief, defendants Li and Chen have taken additional actions that intentionally and artificially increased expenses and thereby reduced Teetex' income before taxes for the calendar years 2014 and following until June 7, 2016 with a purpose of reducing the profits that otherwise would have been distributed to plaintiff.

**FIRST CLAIM FOR RELIEF**

**(Intentional Misrepresentation – all defendants)**

33)   Plaintiff incorporates by this reference each and every preceding paragraph and allegation as if set forth at length herein.

34)   Throughout the negotiations between plaintiff Zhu and Chen as Li's agent, Zhu and Chen negotiated a sale price based on the representation in tax returns, reaffirmed by Chen orally, that Teetex had $200,000 in profits before taxes.  Accordingly, in each offer and counter offer by Chen for Li, Chen reaffirmed the representation that Teetex's profits in 2015 before taxes were approximately

$200,000. This occurred in at least three phone calls in the last several days of May and first several days of June, 2016.

35) Each the above representations were false. In fact, Teetex's profits in calendar 2015 were approximately $750,000, not $200,000 as had been represented to Zhu.

36) Defendants and each of them knew the representations by Chen were false when made and both defendants intended plaintiff to rely on the misrepresentations.

37) Plaintiff Zhu actually and justifiably relied on Chen's reaffirmances throughout negotiations to value his interest in Teetex.

38) During the times referenced herein, defendant Li was a fiduciary to plaintiff Zhu and owed him the duties to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law. Plaintiff had a right to rely on the representations of defendants and defendants had a duty to disclose to plaintiff the actual profits of Teetex but intentionally failed to do so.

39) Defendants Li was the manager of Teetex and on information and belief, defendant Chen actively participated in the management and business of Teetex and both defendants accordingly had superior knowledge of Teetex' operations, accounts, income and expenses.

40) As a proximate result, plaintiff Zhu was damaged in an amount to be proven at trial, but believed to be in excess of $2,000,000.

41) Defendants' actions as alleged herein were taken with malice, oppression and fraud as used in Civil Code § 3294, entitling plaintiff to exemplary damages according to proof.

## SECOND CLAIM FOR RELIEF

### (Negligent Misrepresentation – all defendants)

42) Plaintiff incorporates by this reference each and every preceding paragraph and allegation as if set forth at length herein.

43) Defendants represented to plaintiff that actual profits of Teetex were $204,000 for 2015, and that the year-to-date 2016 undistributed profits until June 7, 2016 were $184,723 (making plaintiff's purported year to date undistributed profit $129,306).

44)    Defendants had no reason to believe that actual profits of Teetex were $204,000 for 2015, or that the year-to-date 2016 undistributed profits until June 7, 2016 were $184,723 (making plaintiff's purported year to date undistributed profit $129,306).

45)    As  a proximate result, plaintiff has been damaged in an amount to be proven at trial, but believed to be in excess of $2,000,000.

## THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty – all defendants)

46)    Plaintiff incorporates by this reference each and every preceding paragraph and allegation as if set forth at length herein.

47)    During the times referenced herein, defendant Li was a fiduciary to plaintiff Zhu and owed him duties of loyalty and care, including the duties to hold actual profits in trust and account to other members truthfully, to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.  Plaintiff had a right to rely on the representations of defendants.

48)    Defendants had a duty to disclose to plaintiff the actual profits of Teetex but intentionally failed to do so.

49)    By representing the profits of Teetex for 2015 to be approximately $200,000 and by stating plaintiff's share of 2016 undistributed profits to June 7, 2016 was $129,306, Defendants breached the duty to truthfully account to plaintiff Zhu and the duty not to engage in negligent or intentional misconduct.

50)    By concealing the actual profits from plaintiff and by inflating expenses for years 2014-2016 and until June 7, 2016, defendant Li breached her duties of care, loyalty and to refrain from wrongful conduct and knowing violations of the law.

51)    Defendant Chen knowingly and in concert aided and abetted Li in helping her to breach her fiduciary duties to plaintiff.

52)    As a proximate result, plaintiff has been damaged in an amount to be proven at trial but believed to be in excess of $2,000,000.

53)     Defendants' actions and concealments described above were taken with malice, oppression and fraud, entitling plaintiff to punitive and exemplary damages according to proof.

**FOURTH CLAIM FOR RELIEF**

**(Breach of Written Contract – Jing Li)**

54)     Plaintiff incorporates by this reference each and every preceding paragraph and allegation as if set forth at length herein.

55)     On or about August 10, 2016, plaintiff and defendant Li entered into the PSA.

56)     Plaintiff performed each and every covenant, condition and promise required of him under the PSA.

57)     Defendant Li breached the PSA by failing and refusing to pay to plaintiff his share of undisputed profits as of June 7, 2016, on or before June 30, 2018 or at all, by curtailing plaintiff's ability to access accounting and banking records, and by failing to account to plaintiff for the unearned profits as of the date of his separation from Teetex.

58)     As a proximate result, plaintiff has been damaged in an amount according to proof but not less than $129,306.

**FIFTH CLAIM FOR RELIEF**

**(Breach of Guarantee – all defendants)**

59)     Plaintiff incorporates by this reference each and every preceding paragraph and allegation as if set forth at length herein.

60)     As a part of plaintiff's sale of his interest in Teetex to defendant Li, both defendants Li and Chen jointly executed a written guarantee in which they, and each of them personally guaranteed the prompt, full and complete performance of all payment obligations under the PSA  Defendants waived diligence, presentment, protest an defenses and any requirement that any right or power be exhausted among other defenses as stated in the Guarantee.

61)     Plaintiff performed each and every act and omission required of him under the guarantee

62)     Defendant Li breached the PSA as alleged above.

63)     As a result, plaintiff has been damaged in an amount to be proven at trial but believed to be in excess of $129,306.

First Amended Complaint                         Page 8

**SIXTH CLAIM FOR RELIEF**

**(Civil Conspiracy – all defendants)**

64)     Plaintiff incorporates by this reference each and every preceding paragraph and allegation as if set forth at length herein.

65)     Plaintiff is informed and believe and based thereon alleges that as early as 2013, defendants Li and Chen knowingly and intentionally entered into a plan and scheme by which they would artificially inflate expenses of Teetex, and divert money from Teetex in order to deprive plaintiff of his portion of undistributed profits.  This plan and scheme involved providing false information and documents to plaintiff as described above in order to minimize the apparent profits available for distribution, hiding actual records of Teetex from plaintiff, and refusing to distribute even the stated undistributed profits.

66)     In furtherance of the conspiracy defendant Li breach her fiduciary duties to plaintiff by failing to account for income and expenses, defendant Chen falsely represented facts to plaintiff including the before tax income of Teetex for 2015, deprived plaintiff of his distributions, and excluded plaintiff from his rights as a member of Teetex.

67)     The last overt act of defendants currently known to plaintiff is the refusal to pay to plaintiff his undistributed profits for the period ending June 7, 2016 on or before June 30, 2018.

68)     As a proximate result, plaintiff has been damaged in an amount according to proof at trial but believed to be in excess of $2,000,000.

69)     Defendants actions were taken with malice, oppression and fraud, entitling plaintiff to exemplary damages according to proof at trial.

**SEVENTH CLAIM FOR RELIEF**

**(Accounting – Defendant Li)**

70)     Plaintiff incorporates by this reference each and every preceding paragraph and allegation as if set forth at length herein.

71)     At all relevant times alleged a relationship of trust existed in which defendant Li as manager of Teetex had the duties alleged above.

72)    The circumstances alleged herein including the discovery of an email suggesting false invoices be created, and another email disclosing the actual profits of Teetex were more than 3.75 times as was reported to plaintiff, require an accounting in equity and legal remedies would be inadequate.

73)    An unknown balance is due to plaintiff that cannot be ascertained without an accounting, the means of which are within the knowledge of defendant Li.

**Wherefore**, plaintiff prays for the following:

A.  Damages according to proof at trial;

B.  Attorneys' fees for breach of contract and breach of guarantee;

C.  Exemplary damages according to proof;

D.  An accounting of the profits and losses of Teetex for the calendar years 2013-2015 and for 2016 through June 7, 2016;

E.  Costs of suit;

F.  Such other and further relief as this Court deems just and proper.


Dated: May 13, 2019             Law Offices of Brian Irion

                                By:/s/ Brian Irion
                                Attorneys for plaintiff Martin Zhu


**DEMAND FOR JURY TRIAL**

## SALE OF TEETEX, LLC INTEREST AGREEMENT

This Sale of LLC Interest Agreement (the "**Agreement**") is entered this 7 day of June, 2016 (the "**Effective Date**"), by and between **JIAJIE ZHU** (a 70% Member of Teetex, LLC, and hereinafter referred to as "**Seller**"), and **JING LI** (a 30% Member of Teetex, LLC, and hereinafter referred to as "**Purchaser**").

WHEREAS, Seller is the beneficial and record owner of 70% membership interest in Teetex, LLC (the "**Company**");

WHEREAS, Seller desires to sell to Purchaser and Purchaser desires to buy from Seller all of Seller's 70% membership interest in the Company (the "**Seller's Interest**") on the terms and conditions set forth in this Agreement;

NOW, THEREFORE, the parties hereby agree as follows:

### ARTICLE I

1.1   The Seller will sell the Seller's Interest in the Company to Purchaser for a purchase price of **US$752,500.00** in cash (the "**Purchase Price**").

1.2 Purchaser's Payment Obligations.

1.2.1   Distribution.  On or before **June 30, 2018** (the "Distribution Date"), Purchaser shall cause Company to pay Seller his 70% share of the Company's undistributed profits and losses accumulated as of June 7, 2016 (the "Cutoff Date"). Promptly after execution of this Agreement, Purchaser shall cause Company engage, CPA (Kevin Huang), or such other independent accounting firm acceptable to Seller to prepare Financial Statements.  The CPA prepared Financial Statements shall be made available to Seller. If the CPA prepared Financial Statements discloses any underpayment to Seller, Purchaser shall immediately pay to Seller the amount of such underpayment. If Seller receives overpayment, due to any additional liability related to the Company occurred before the Cutoff Date, which arises after the Distribution date, Seller shall immediately pay to Purchaser the amount of such overpayment.

1

CONFIDENTIAL

**EXHIBIT 1**

1.2.2 Debt Repayments. Teetex LLC shall repay the Company Debt by delivering to Anwen Li, by wire transfer, payments pursuant to the following schedule:

- Within **thirty (30) days following the Effective Date**: **TWO HUNDRED THIRTY THOUSAND** dollars **(US$230,000)** (Already Paid on June 23rd, 2016) ;
- On or before **August 15, 2016**: **ONE HUNDRED THOUSAND dollars (US$100,000) PLUS 50% of THE ACCRUED INTEREST (3% ANNUAL INTEREST RATE, Exhibit C);**
- On or before **August 31, 2016**: **ONE HUNDRED THOUSAND dollars (US$100,000) PLUS 50% of THE ACCRUED INTEREST (3% ANNUAL INTEREST RATE, Exhibit C)**

1.2.3  Purchase Consideration and Payments. Purchaser shall pay the Purchase Price by delivering to Seller, by wire transfer, payments pursuant to the following schedule:

- On or before **December 31, 2016**: **TWO HUNDRED FIFTY THOUSAND** dollars **(US$250,000)**
- On or before **June 30, 2017**: **TWO HUNDRED FIFTY THOUSAND** dollars **(US$250,000)**
- On or before **December 31, 2017**: **TWO HUNDRED THOUSAND** dollars **(US$200,000)**
- On or before **June 30, 2018**: **FIFTY-TWO THOUSAND FIVE HUNDRED** dollars **(US$52,500)**

1.2.4 Purchaser's Failure to Make Payment Due. If Purchaser fails to make any Purchaser's payment obligations hereunder (the "Payment Obligation") due by Purchaser to Seller pursuant to this Agreement, (the "Delinquent Amount"), Seller shall notify Purchaser of the default specifying the amount due to cure the default and support documents (i.e. wiring record(s) or bank statement(s) that show the previous payments by Purchaser) and shall provide the Purchaser with thirty (30) consecutive days from the date of the written demand to cure the default.

2

CONFIDENTIAL

1.2.5 Personal Guarantee. Each Payment Obligation due by Purchaser to Seller pursuant to this Agreement shall be personally guaranteed in writing by Purchaser, Jing Li, and her husband, Dong Chen (collectively, the "Guarantor"). The executed Personal Guarantee shall be set forth as **Exhibit A** to this Agreement.

1.2.6 Designated Bank Accounts. All of the payments specified in this Articles 1.2, to be made by Purchaser, shall be paid to the designated bank accounts specified by Seller in writing.

## ARTICLE II

2.1   Seller hereby represents to Purchaser and covenants with Purchaser, as follows:

2.1.1 Authority and Capacity. Seller has all requisite power, authority and capacity to enter into this Agreement and to perform Seller's obligations hereunder and to consummate the transaction contemplated hereby.  No approval or consent of any persons other that Seller is necessary.

2.1.2 Agreement Will Not Cause Breach or Violation. The execution, delivery and performance of this Agreement by Seller does not and the consummation of the transaction contemplated hereby will not (a) result in a breach of or default under any other agreement to which Seller is a party or by which it is bound; or (b) violate any law applicable to Seller or any judgment, order, injunction, decree or award of any court, arbitrator, administrative agency or governmental body applicable to or binding upon Seller.

2.1.3 Binding Agreement. This Agreement has been duly and validly executed and delivered by Seller and constitutes Seller's valid and binding agreement, enforceable against Seller in accordance with and subject to its terms.

2.1.4 Title to Seller's Interest. Seller is the lawful record and beneficial owner of all of Seller's Interest, free and clear of any liens, claims, agreements, charges, security interests and encumbrances whatsoever.

3

CONFIDENTIAL

ARTICLE III

3.1    Purchaser hereby represents to Seller and covenants with Seller, as follows:

3.1.1 Authority and Capacity of Purchaser. Purchaser has all requisite power, authority and legal capacity to enter into this Agreement and to perform her obligations hereunder and to consummate the transaction contemplated hereby. The execution, delivery and performance of this Agreement by Purchaser does not and the consummation of the transaction contemplated hereby will not (a) result in a breach of or default under any other agreement to which the Purchaser is a party or by which she is bound; or (b) violate any law applicable to Purchaser, or any judgment, order, injunction, decree or award of any court, arbitrator, administrative agency or governmental body applicable to or binding upon Purchaser.

3.1.2 Binding Agreement. This Agreement has been duly and validly executed and delivered by Purchaser and constitutes Purchaser's valid and binding agreement, enforceable against Purchaser in accordance with and subject to its terms.

3.1.3 Purchaser's Knowledge of Company. Purchaser is the organizer of the Company who formed the Company, and, as Manager of Company, has been significantly involved in all aspects of the operations and management of the Company. Purchaser is completely familiar with the business, technologies, financial condition, risks, and prospects of the Company, and Seller has made no representation or warranty whatsoever regarding the Company, its business, technologies, financial condition or prospects. Seller is selling Seller's Interest without any representation, warranty, promise, or guarantee of any kind or nature (except as set forth in Article II), and Purchaser is purchasing Seller's Interest based entirely on Purchaser's knowledge of the Company, and without reliance on any information or representations made or allegedly made by Seller, its employees or agents.

4

CONFIDENTIAL

3.1.4 Investment Representations. Purchaser is acquiring the Seller's Interest for Purchaser's own account and is not acquiring the Seller's Interest with a view to or for sale in connection with any distribution thereof within the meaning of the Securities Act of 1933, as amended.

3.1.5 No Finder.  Purchaser has not retained any broker, finder, adviser or intermediary in connection with the transaction contemplated by this Agreement which would be entitled to a broker's, finder's or similar fee or commission in connection therewith or upon the consummation thereof.

3.1.6 Bank Account.  Purchaser shall, upon execution of this Agreement, cause Seller to be added as a signatory on all of Company's bank accounts anywhere in the world, whether now or hereafter existing.  Until Purchaser has made all payment obligations under Article 1.2, Seller shall not be removed, as a signatory, from any of Company's bank accounts anywhere in the world, whether now or hereafter existing.

ARTICLE IV

4.1. Default by Purchaser. If Purchaser is in default of any of the terms and provisions hereunder and such default is not cured within 30 days after Seller sent written notice of the default to Purchaser, a) Purchaser shall, irrevocably and unconditionally, appoint Seller as sole non-member Manager of the Company, and Purchaser shall immediately resign as Manager of the Company; b) Seller may immediately withdraw funds from any of Company's bank accounts anywhere in the world, whether now or hereafter existing, to satisfy the Payment Obligation; and c) Seller may immediately pursue all available legal and equitable remedies. The exercise of any one particular remedy by Seller shall not be construed to prohibit Seller from pursuing any and all other remedies that may be available at law, in contract, or in equity.

4.2. Withdrawal as Member. The parties agree that, as of the _Effective Date_, Seller shall withdraw and dissociate from the Company and have no further rights as Member in the Company. Notwithstanding the foregoing, Seller shall continue to

5

CONFIDENTIAL

have full access to all records, documents and materials of the Company, including but not limited to bank accounts, until the completion of this Agreement to ensure Purchaser's compliance with this Agreement.

4.3. Revised Membership Interests and Capital Accounts. Each Seller's Interest in the Company, adjusted to reflect the transfer of the Seller's Interest by Seller to Purchaser hereunder, is set forth below:

| Member | % Interest in Company Prior to Sale of Seller's Interest | % Interest in Company After Sale of Seller's Interest |
|---|---|---|
| JIAJIE ZHU (Seller) | 70.0% | 0% |
| JING LI (Purchaser) | 30.0% | 100% |

4.4 Indemnification. Purchaser will indemnify, defend, and hold Seller harmless from and pay any and all losses, costs, damages, claims, obligations, liabilities and expenses (including, without limitation, all reasonable attorneys' fees and costs) (collectively, "Claims"), directly or indirectly resulting from, relating to, arising out of or attributable to any of the following: (a) any breach, violation or default by Purchaser of any covenant, agreement or obligation of Purchaser in this Agreement; and (b) any legal responsibility, claims, debts, and/or liabilities whatsoever incurred by or in connection with the Company after the Cut-off Date .

4.5 Restrictive Covenant.  From the Effective Date to December 31, 2017, both Seller and Shanghai Tianan Textiles Co., Ltd including any of its subsidiaries and affiliates under its control ("Shanghai Tianan Entities") shall not, interfere with Company's business relationships with Company's currently existing customers (Exhibit D), and shall not induce any of Company's currently existing customers to terminate or breach any contractual relationship with the Company.  For purposes of clarification, the followings shall not be deemed violation of this Section 4.5: (1) Seller and Shanghai Tianan Entities' business relationships or activities with any retail business customer now or hereafter existing (retail business customers refer to customers with retail sales that target any end customers of the products); (2) Seller and Shanghai Tianan Entities' existing wholesale customers (Exhibit E) ; and (3) Seller and Shanghai Tianan Entities may freely enter into business relationships

6

with any new wholesale customer with Company's prior consent (the consent shall not be unreasonably withheld; consent is not unreasonably withheld if Company has documented substantial existing business with the Company wholesale customer, for the same product or project that target the same retailer customers, at the time Seller or Shanghai Tianan Entities proposes the business relationship).

Seller shall forthwith on demand pay to or reimburse Purchaser for all costs, charges and expenses (including legal fees on a full indemnity basis and all other out-of-pocket expenses) incurred by Purchaser for any actual material breach of this Section 4.5.

4.6 Shanghai Tianan. The currently existing commission agreement between Shanghai Tianan and Company shall become null and void on the Effective Date after this Agreement becomes effective.  Any new working relationship between Shanghai Tianan and Company after the Effective Date shall be on a month-to-month basis, applying the same commission rate before their commission agreement became null and void. If Company wishes to terminate working relationship with Shanghai Tianan, Company shall provide Shanghai Tianna with ten (10) days' written notice.

ARTICLE V

5.1 Further Assurances. Each of the parties hereto shall from time to time at the request of the other party hereto, and without further consideration, execute and deliver to such other party such further instruments of assignment, transfer, conveyance and confirmation and take such other action as the other party may reasonably request for the purpose of carrying out this Agreement.

5.2 Severability. The provisions of this Agreement will be deemed severable and the invalidity or unenforceability of any provision will not affect the validity or enforceability of the other provisions hereof. If any provision hereof is determined by a court of competent jurisdiction or an arbitrator to be invalid or unenforceable, such provision shall be limited to the extent necessary to make it valid and

7

CONFIDENTIAL

enforceable, or if necessary, severed from this Agreement, and the remainder of the Agreement shall be in full force and effect.

5.3 Costs.  Except as otherwise provided herein, the parties shall each bear their own costs, attorneys' fees and other fees incurred in connection with this Agreement.

5.4 Successors and Assigns. Subject to the provisions of this Agreement relating to the transferability of Seller's Interest, this Agreement shall be binding upon and inure to the benefit of Purchaser and Seller and their respective successors and assigns; provided, however, that this Agreement and the rights and obligations of Purchaser hereunder may not be assigned without the prior written consent of Seller. Whenever appropriate in this Agreement, references to Purchaser or Seller shall be deemed to refer to such individual's successors or assigns.

5.5 Dispute Resolution.

5.5.1 Mediation and Arbitration. In any dispute over the provisions of this Agreement, if parties cannot resolve the dispute to their mutual satisfaction, the matter may be submitted to mediation. The terms and procedure for mediation shall be arranged by the parties to the dispute. If good-faith mediation of a dispute proves impossible or if an agreed-upon mediation outcome cannot be obtained by the parties, the dispute may be submitted to arbitration in accordance with the rules of the American Arbitration Association. Any party may commence arbitration of the dispute by sending a written request for arbitration to all other parties to the dispute. The request shall state the nature of the dispute to be resolved by arbitration, and, if all parties to the dispute agree to arbitration, arbitration shall be commenced as soon as practical after such parties receive a copy of the written request. All parties shall initially share the cost of arbitration, but the prevailing party or parties may be awarded attorney fees, costs and other expenses of arbitration. All arbitration decisions shall be final, binding and conclusive on all the parties to arbitration, and legal judgment may be entered based upon such decision in accordance with applicable law in any court having jurisdiction to do so.

8

CONFIDENTIAL

5.5.2 Equitable Relief. Each party is entitled to bring an action for temporary or preliminary injunctive relief at any time in any court of competent jurisdiction in order to prevent irreparable injury that might result from a breach of this Agreement. Furthermore, upon the occurrence of an event of default by Purchaser, Seller is entitled to exercise all of the rights and remedies described in this Agreement and, at any time, to bring an action in a court of competent jurisdiction (or, at his election, to initiate an arbitration proceeding) for purposes of enforcing the terms of this Agreement, notwithstanding the arbitration provision.

5.6   Entire Agreement. This Agreement (including the Exhibits hereto), the Agreement executed on June 6, 2016 (the "Chinese Agreement") attached as Exhibit B, and the documents delivered pursuant hereto constitute the entire agreement and understanding between the parties and supersede any prior agreement and/or understanding relating to the subject matter of this Agreement. If there is direct conflict between this Agreement and the Chinese Agreement, this Agreement shall control. This Agreement may only be modified or amended by a duly authorized written instrument executed by the parties hereto.

5.7   Counterparts and Signatures. This Agreement may be executed in any number of counterparts and by the several parties hereto in separate counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same Agreement. Signatures by facsimile or electronic means shall be valid and enforceable; provided, however, that the Purchaser shall deliver to the Seller the originally signed Personal Guarantee attached as Exhibit A hereto.

5.8   Notices. Any notice or communication required or permitted hereunder shall be sufficiently given if sent by certified or registered mail, postage prepaid, with return receipt requested:

(a)  To Purchaser at:

Yi Yao _____

9

CONFIDENTIAL

Attorney at Law

433 Airport Blvd. Suite 415, Burlingame, CA 94010


(b) To Seller at:

Christopher Lee

Pacific Law Group LLP

100 Century Center Ct. Suite 415, San Jose, CA 95112


5.9   Governing Law. This Agreement shall be construed in accordance with the laws of the State of California without reference to, and regardless of, any applicable choice or conflicts of laws principles.

5.10 Confidentiality. This Agreement and the terms contained here are to be held in the strictest confidence by the parties and are not to be disclosed by the parties to anyone other than their respective directors, officers and financial and legal advisors with a need to know.

5.11 Headings.  The section headings in this Agreement are for convenience only and will not be considered a part hereof or affect the construction or interpretation of any provisions of this Agreement.

5.12 No Benefit to Others.  The representations, warranties, covenants and agreements contained in this Agreement are for the sole benefit of the parties hereto and they will not be construed as conferring any rights on any other persons.

5.13 Time is of the Essence. Time is of the essence in the observance and performance of all of the terms, covenant and conditions of this Agreement.

10

5.14 This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument.

[Remainder of this page intentionally left blank]

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on the day and date written below.

**PURCHASER**                              **SELLER**

By: _Jing Li_____     By: ___Jiajie Zhu_____

Name:  JING LI                            Name:  JIAJIE ZHU

Date: August _8_, 2016               Date: August _10_, 2016

Attachments:
EXHIBIT A – PERSONAL GUARANTEE
EXHIBIT B – CHINESE AGREEMENT
EXHIBIT C – ACCRUED INTEREST
EXHIBIT D – TEETEX CUSTOMERS LIST
EXHIBIT E – SHANGHAI TIANAN WHOLESALE CUSTOMERS LIST

11

CONFIDENTIAL

**Exhibit A**

**PERSONAL GUARANTEE**

From: Jing Li and Dong Chen (collectively, the "Guarantor")

To: Jiajie Zhu (the "Seller")

IN CONSIDERATION OF the Seller allowing Purchaser to satisfy the Payment Obligation pursuant to the Sale of Teetex LLC Interest Agreement (the "Agreement") by method of installments, plus other valuable consideration, the Guarantor personally guarantee the prompt, full and complete performance of any and all present and future Payment Obligations due (pursuant to Section 1.2 of the Agreement) under the terms of the Agreement and under the following terms and conditions:

1. The Guarantor unconditionally and irrevocably guarantees that Purchaser will promptly pay the full amount of the Payment Obligation according to the terms and conditions provided by the Agreement;
2. The Guarantor shall be jointly and severally liable with Purchaser for all Payment Obligations under the Agreement. Guarantor shall not assign any of his/her obligations hereunder.
3. The Guarantor has already obtained Seller's consent and can mortgage his/her primary residency to satisfy the Payment Obligation and to finance the Company's business operation, if necessary, without further notice to the Seller; provided if the fund is used to finance the Company's business, the fund shall be deposited in the Company's bank account. Unless otherwise specified in this section, the Guarantor agrees not to pledge, hypothecate, mortgage, assign, dispose of, sell or otherwise transfer all or substantially all of Guarantor's assets without the prior written consent of the Seller;
4. In the event of Purchaser's default, should Purchaser wish to liquidate Teetex LLC's assets to satisfy her Payment Obligation, upon proving to Seller that Teetex LLC has sufficient assets free and clear of liens to satisfy the Payment Obligation, Purchaser shall be given 15 additional days beyond the cure period provided in Section 1.2.4 of the Agreement to liquidate Teetex LLC assets to fulfil the Payment Obligation.
5. If any default by Purchaser is not cured within the cure period provided in Section 1.2.4 of the Agreement, Seller may immediately thereafter apply ex parte to the court for entry of judgment against Purchaser and Guarantor, by filing a declaration by Seller or Seller's counsel, which shall state any payments made by Purchaser and/or Guarantor pursuant to the Agreement, and take judgment on the amount set forth in the Agreement, less any payments by Purchaser and/or Guarantor received by Plaintiff

12

CONFIDENTIAL

without any further appearance in court by either Seller or Purchaser.  No notice to Purchaser or Guarantor of such application for entry of judgment is required.  Such entry of judgment shall be final and all parties waive their right to appeal.

6.  Guarantor hereby waives diligence, presentment, demands for payment and/or performance, protest, defences, setoffs and counterclaims and any requirement that any right or power be exhausted or any action be taken against Guarantor, any other guarantor of all or any portion of any Payment Obligation, all notices (whether of non-payment, dishonor or otherwise) with respect to any Payment Obligation and notice of acceptance of this Guaranty.

7.  This Guaranty is in addition to, independent of, and cumulative of any other guaranty or right and remedy at law or in equity or by statute or otherwise now or at any time held by or available to Seller.

8.  Guarantor shall forthwith on demand pay to or reimburse Seller for all costs, charges and expenses (including legal fees on a full indemnity basis and all other out-of-pocket expenses) incurred by Seller in exercising any of his rights hereunder or in seeking to recover any sum due hereunder or otherwise preserving or enforcing his rights hereunder.

This Personal Guarantee shall be construed exclusively in accordance with, and governed by, the laws of the State of California. This Personal Guarantee embodies the entire promise of Guarantor to personally guarantee Purchaser's Payment Obligation and supersedes all prior agreements and understandings relating to the subject matter here, whether oral or in writing. This Personal Guarantee may not be assigned or transferred without a written document, signed by the Guarantor and Seller, permitting such assignment or transfer.

**GUARANTOR**

By: _Jing Li_

Name: JING LI

Date: August _8_, 2016

**GUARANTOR**

By: _Dong Chen_

Name: DONG CHEN

Date: August _8_, 2016

**SELLER**

By: _Jiajie Zhu_

Name: JIAJIE ZHU

Date: August _10_, 2016

13

CONFIDENTIAL

**Exhibit B**

**CHINESE AGREEMENT**

# 协议

1) Jing Li 同意立即将 Jiajie Zhu 加入 Teetex 所有已开户银行所有帐户的签字权以及未来可能开设的新的任何银行账户的签字权。Jiajie Zhu 同意此协议签署后，在 Jing Li 没有任何违约的前提下，Jiajie Zhu 只对银行账户行使查看权。

2) Teetex 借李安文的本金$43 万美元（两年无息）及其逾期利息，Jing Li 同意在签订股权转让协议后：
- 30 天内还款$23 万美元
- 7 月 31 日前还款$10 万美元加 50%应付预逾期利息
- 8 月 31 日钱还款$10 万美元加 50%应付预逾期利息

逾期利息根据所借本金实际到账时间，切割日期和 3%的年利率计算。利息费用按照现有股权比例，Jiajie Zhu 承担 70%，Jing Li 承担 30%。

3) Jing Li 和 Jiajie Zhu 双方同意 Jing Li 购买 Jiajie Zhu 在 Teetex 所占的 70% membership（股份）：Jing Li 同意按公司市值$107.5 万美元计算，即 Jing Li 同意以$75.25 万美元购买 Jiajie Zhu 的 70%股份。分期付款方案如下：
- 2016 年 12 月 31 日前付$25 万美元
- 2017 年 6 月 30 日前付$25 万美元
- 2017 年 12 月 31 日前付$20 万美元
- 2018 年 6 月 30 日前付$5.25 万美元

4) 以此协议生效日翌日作为切割日，按照现有股权比例（Jiajie Zhu 70%，Jing Li 30%），完成滚存利润和截至切割日的今年已实现利润的分配。款项具体数额由会计师出具。Jing Li 同意在 2018 年 6 月 30 日前，支付上述款项中 Jiajie Zhu 应分配部分（70%）。切割日期以后，Jiajie Zhu 不再享有利润分配。

5) 为确保上述 2)，3)和 4) 所涉及款项的及时和无条件付款，Jing Li 同意以 Jing Li 本人在 Teetex 的所持有股份及其现有在加州的自住房做抵押担保（Jing Li 确认此自住房除银行贷款外，无其它抵押，且 Jing Li 所占房产净值超过$75 万美元）。Jing Li 同时同意在未还清上述所有款项前，未经 Jiajie Zhu 书面授权不得另开设任何其它银行帐户；以及未还清上述所有款项前不得以任何理由取消 Jiajie Zhu 在所有银行帐户的签字权；若 Jing Li 在发生付款违约 30 天内不能完成补救，Jing Li 将无条件辞去 Teetex 的 Manager 的职务，并无条件同意 Jiajie Zhu 担任 Manager，直到还清上述所有款项为止。在未还清上述款项前，未经 Jiajie Zhu 同意，Jing Li 不得出售或转让其股权。

6) Jing Li 和 Jiajie Zhu 同意在本协议签订后 15 天内达成股权转让协议.

14

CONFIDENTIAL

7) Jiajie Zhu 同意在 Jing Li 书面确认上述条款后，立即通知银行暂停法律行动 (Interpleader)。次协议签署后，Jing Li 和 Jiajie Zhu 同意再签署一份和解协议，提交银行，解冻银行账户。

8) 2017 年 12 月 31 日前，上海天安和上海天安目前所代理公司不得和 Teetex 的现有客户产生直接业务往来.

9) 本次股权转让交易可能产生的交易费用，Jing Li 和 Jiajie Zhu 各承担 50%。

10) 上海天安和 Teetex 的原代理合同自此协议生效后，自动失效。后续代理合同，在保持现有代理费率情况下，上海天安和 Teetex 按月确认是否继续代理合同。

11) 此协议具有法律效力。最终协议必须包含此协议所有内容。最终协议必须基于此协议签订。最终协议必须规定此协议各条款的具体实施细节，包括但不限于支付方式，担保流程的完成时限，上海天安现有代理公司及 Teetex 现有客户清单。

Date: June 6th, 2016          Signature: _____

Jing Li

Date: June 6th,  2016          Signature: _____

Jiajie Zhu

15

CONFIDENTIAL

**Abacus Consulting Services**

401 N. Garfield Ave. Ste 1, Alhambra, CA 91801 Tel: 626-487-8909 Fax: 626-282-9252
Website: http://www.certifiedchinesetranslation.com/ Email: info@certifiedchinesetranslation.com

## CERTIFICATION OF TRANSLATION
### (Certified by Courts)

This is to certify under the penalty of perjury that I am a court certified interpreter in California with license number #301138 and I am fluent in Chinese (Mandarin) and English languages, that the document(s) listed as

### Chinese Translation Exhibit B

is (are) complete and accurate translations of the original written document(s) to the best of my ability and knowledge.

I certify under penalty of perjury under the Laws of the State of California that the foregoing is true and correct.

Signed on 5/10/2019          in Los Angeles, California, USA

Samuel Shen Chong
Federal Court Registered Interpreter (US District Courts)
CA Court Certified Interpreter (License No. 301138), New York Court Certified Interpreter
ATA (American Translators Association) Associate # 243264
Abacus Consulting Services
401 N. Garfield Ave.
#1
Alhambra, CA 91801, USA
Tel: 626-487-8909
Fax: 626-282-9252

Exhibit B

Chinese Agreement

Agreement

1)   Jing Li agrees to immediately include Jiajie Zhu as the signatory for all existing accounts of Teetex in all opening banks and for any new bank accounts that may be opened in the future. Jiaie Zhu agrees that after signing of this Agreement, Jiajie Zhu only has the right to view the bank accounts on the premise that Jing Li has no breach of contract.

2)   Teetex borrowed a principal of $ 430,000 (interest-free for two years) from Anwen Li. For such principal and overdue interest, Jing Li agrees that after signing of a share transfer agreement, she will:
   - Repay $ 230,000 within 30 days
   - Repay $ 100,000, plus 50% of overdue interest payable, prior to July 31
   - Repay $ 100,000, plus 50% of overdue interest payable, prior to August 31

The overdue interest will be calculated at the annual interest rate of 3%, based on the actual credit time of the borrowed principal and the cutting date. The interest expenses will be shared by Jiajie Zhu at 70% and Jing Li at 30%, based on the existing shareholding ratio.

3)   Jing Li and Jiajie Zhu agree that Jing Li will purchase Jing Li's 70% of membership (shares) in Teetex: Jing Li agrees to calculate at the company's fair market value of $ 1,075,000, that is, Jing Li agrees to purchase Jiajie Zhu's 70% of membership at $ 752,500, and make payment in installment according to the following scheme:
   - Pay $ 250,000 before December 31, 2016
   - Pay $ 250,000 before June 30, 2017
   - Pay $ 200,000 before December 31, 2017
   - Pay $ 52,500 before June 30, 2018

4)   The effective date of this Agreement shall be the cutting date, on which date the accumulated profit and the profit realized this year as at the cutting date shall be distributed according to existing shareholding ratio (Jiajie Zhu 70% and Jing Li 30%). The specific amount will be announced by the accountant. Jing Li agrees to pay the part distributable to Jiajie Zhu before June 30, 2018. After the cutting date, Jiajie Zhu will not be eligible for distribution of any profits.

5)   In order to ensure the timely and unconditional payment of the funds involved in Paragraphs 2), 3) and 4) above, Jing Li agrees to use Jing Li's shares in Teetex and its existing self-occupied house in California as mortgage guarantee (Jing Li confirms that there is no other mortgage except the bank loan for the self-occupied house, and the net value of the house occupied by Jing Li is more than $750,000). Jing Li also agrees that no other bank account may be opened without the written authorization of

Jiajie Zhu before all the above payments are made; and that Jiajie Zhu's right to sign all bank accounts cannot be cancelled for any reason before the full payment of all the above amounts; If Jing Li fails to complete the remedy within 30 days of the payment default, Jing Li will unconditionally resign from Teetex as manager, and unconditionally agree that Jiajie Zhu will act as the manager until the full payment of all the above amounts. Jiajie Zhu agrees that Jing Li may not sell or transfer its equity before full payment of the above amounts.

6)   Jing Li and Jiajie Zhu agree to reach a share transfer agreement within 15 days after the signing of this Agreement.

7)   Jiajie Zhu agrees to notify the bank of the suspension of legal action (interpleader) immediately after Jing Li confirms the above terms in writing. After the signing of this Agreement, Jing Li and Jiajie Zhu agree to sign another settlement agreement and submit it to the bank to unfreeze the bank account.

8)   Before December 31, 2017, Shanghai Tianan and its current agent may not directly do business with Teetex's existing customers.

9)   The transaction costs incurred in this share transfer transaction will be borne by Jing Li and Jiajie Zhu at 50% respectively.

10) The original agency contract between Shanghai Tian'an and Teetex will automatically become invalid after this Agreement comes into effect. In the follow-up agency contract, Shanghai Tianan and Teetex will confirm whether to continue the agency contract on a monthly basis while maintaining the existing agency rate.

11) This Agreement has legal effect. The final agreement must contain all the contents of this Agreement. The final agreement must be signed based on this Agreement. The final agreement must specify the specific implementation details of the terms of this Agreement, including but not limited to the payment method, the completion deadline of guarantee process, Shanghai Tianan's existing agency and Teetex's existing customer list.

Date: June 6th, 2016       Signature: Jing Li
                                       Jing Li

Date: June 6th, 2016       Signature: Jiajie Zhu (signed)
                                        Jiajie Zhu



## Exhibit C

### Accrued Interest

| Date | Amount | Due Date | Effective Date | Overdue Days | Overdue Years | Annual Interest Rate | Interests |
|---|---|---|---|---|---|---|---|
| 11/9/2012 | 130000 | 11/8/2014 | 6/7/2016 | 577 | 1.58 | 3% | 6165 |
| 12/28/2012 | 200000 | 12/27/2014 | 6/7/2016 | 528 | 1.45 | 3% | 8679 |
| 2/27/2013 | 100000 | 2/26/2015 | 6/7/2016 | 467 | 1.28 | 3% | 3838 |
| | | | | | Total Interest | | 18683 |
| | | | | | 50% of Total Interest | | 9342 |

16

CONFIDENTIAL

**Exhibit D**

**Teetex Customers List**



| No. | Customer Name |
|-----|---------------|
| 1 | REDACTED |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |

17

CONFIDENTIAL

**Exhibit E**

**Shanghai Tianan Wholesale Customers List**



| No. | Customer Name |
| --- | --- |
| 1 | REDACTED |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |

18

HONG-JIN GUAN
SHU-WEN YANG *
YINGYING CHEN

\* Admitted in NY only

# PACIFIC LAW GROUP LLP

100 CENTURY CENTER CT.
SUITE 415
SAN JOSE, CA 95112

TELEPHONE (408) 573-8585
FACSIMILE (408) 573-0108

OF COUNSEL:
MITCHELL Y.M. WONG
CHRISTOPHER C. LEE

November 20, 2018

**Via First Class Mail and
Email (tonychen@teetexllc.com)**

Jing Li and Dong Chen
400 Oyster Point Blvd. Suite 522
South San Francisco, CA 94080

**Via First Class Mail and
Email (YYao@yaoyilaw.com)**

Yi Yao
Attorney at Law
433 Airport Blvd. Suite 415
Burlingame, CA 94010

Re:  **Demand for Payment/Breach of Agreement**

Dear Ms. Li and Mr. Chen:

We represent Mr. Jiajie Zhu ("Mr. Zhu").

**PLEASE TAKE NOTICE** that you are in breach of the Sale of LLC Interest Agreement dated June 7, 2016 (the "Agreement").  Specifically, you have breached the following obligation(s) under the Agreement:

Section 1.2.1 Distribution
Description: You have failed to pay Mr. Zhu his 70% of the undistributed profits, due June 30, 2018.

**PLEASE TAKE FURTHER NOTICE** that unless this breach is remedied within 30 days from the date of this letter, you shall thereafter immediately appoint Mr. Zhu as Manager of Teetex, LLC ("Teetex") and give him full access to all of Teetex's bank accounts to allow him to withdraw funds pursuant to Section 4.1 (Default by Purchaser), and indemnify Mr. Zhu for all of his losses and expenses pursuant to Section 4.4 (Indemnification).  We will take actions to protect Mr. Zhu's rights under the Agreement and under the law including, but not limited to, seeking entry of judgment against the Guarantors Jing Li and Dong Chen and recovering the amount owed from such Guarantors' personal assets pursuant to Exhibit A (Personal Guarantee). Please note that it is in your best interest to settle this matter amicably with our client before our lawsuit is filed because you will end up paying not only Mr. Zhu's damages, but will also pay our attorney's fee, the court costs, and the legal interest on the judgment at a rate of 10% per annum, upon entry of judgment.

## EXHIBIT 2

Jing Li and Dong Chen
November 20, 2018
Page **2** of **2**

In the past, you have repeatedly breached the Agreement, frustrated the Agreement purpose and deprived Mr. Zhu a substantial part of the benefit of the Agreement.  For example, you purposefully charged Teetex excessive expenses in rent, postage, travel and freight beyond the amounts normally expended in an attempt to drive down Teetex' true profit for 2016 to avoid paying Mr. Zhu's share of the undistributed profit.  You intentionally shut down Mr. Zhu's online access to Teetex's bank account when the Agreement expressly provided Mr. Zhu shall be added as account signatory and given full access (See Sections 3.1.6., 4.1 and 4.2).  Finally, you have continuously denied Mr. Zhu from accessing Teetex's information and records despite the Agreement requiring you to give Mr. Zhu full access to all records, documents and materials of Teetex to ensure your compliance with the Agreement (Mr. Zhu narrowly requested for Teetex's contracts, invoices, office lease and cancelled checks relating to Teetex's 2016 operational costs; this same set of documents would have been provided to Teetex's CPA already in order to prepare financial statements/tax returns so there is no burden to Teetex to simply make a duplicate copy for Mr. Zhu).  Your refusal has no other purpose except to conceal these false expenses, to prevent Mr. Zhu from receiving his rightful portion of the undistributed profits and to prevent Mr. Zhu from exercising his rights under the Agreement to withdraw money from Teetex bank account to satisfy your payment obligations.

Enough is enough – Mr. Zhu will not tolerate any further breach of the Agreement by you.  If you ignore this demand for payment, we will pursue all legal remedies available to Mr. Zhu to recover his damages without further notice to you, including those mentioned above, and will <u>pursue the execution sale of any homes held under either Guarantor's name to satisfy the judgment</u>.

You can contact me at the above address or by phone at 408-573-8585.  Your prompt attention to this matter is necessary and appreciated.

Sincerely,

Christopher C. Lee