UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIAJIE ZHU,<br>          Plaintiff,<br>v.<br>JING LI, et al.,<br>          Defendants. | Case No. 19-cv-02534-JSW<br><br>**ORDER DENYING MOTION TO DISMISS**<br>Re: Dkt. No. 17 |

Now before the Court is the motion to dismiss filed by Defendants Dong Chen and Jing Li ("Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument. *See* Civil L.R. 7-1(b). For the reasons set forth below, the Court HEREBY DENIES Defendants' motion to dismiss.

**BACKGROUND**

Teetex, LLC ("Teetex") is a California-based limited liability company engaged in the business of importing textiles from China for resale in the United States. (Dkt. No. 6 (First Amended Complaint ("FAC")) ¶ 10.) The parties heatedly contest most other pertinent facts about the company, its origins, and its makeup. The claims in the FAC center around Plaintiff Jiajie Zhu's contention that Defendants misrepresented Teetex's profits and therefore underpaid Mr. Zhu when Mr. Zhu sold his interest in Teetex to Defendant Jing Li. In their motion, Defendants argue that Mr. Zhu lacks standing to sue because Mr. Zhu was only a "nominal"[1] member of Teetex on

---

[1] In their reply brief, Defendants explain that using a "nominee" member is a common practice in China to protect investor identity. Defendants maintain that "nominees" were chosen for Teetex to avoid lawsuits from the true investors' former employers and business associates.

behalf of his father-in-law Anwen Li.[2] Therefore, according to Defendants, Mr. Zhu did not own the shares Mr. Zhu claims to have sold. Mr. Zhu contends that he was never a "nominal" member or a proxy and argues that he, not Mr. Li, had rights of membership with respect to the pertinent shares.

Several agreements are tangled in this dispute. The first pertinent agreement is titled "Limited Liability Company [M]anagement Operating Agreement of TEETEX, LLC" ("Operating Agreement"). (Dkt. No. 17-1 (Exhibits to Declaration of Doug Chen) p. 11.) The first paragraph of the Operating Agreement states that it is effective as of October 28, 2012, and "is adopted by the members whose signatures appear at the end of this agreement." (*Id.*) The Operating Agreement is signed by Mr. Zhu, Ms. Li, and Mr. Guan. (*Id.* p. 20.) Each are identified in this agreement as "Members." (*Id.*)

Under the heading "Membership Withdrawal and Transfer Provisions," the Operating Agreement states:

> Restrictions on the Transfer of Membership: A member shall not transfer his or her membership in the LLC unless all nontransferring [sic] members in the LLC first agree to approve the admission of the transferee into this LLC. Further, no member may encumber a part or all of his or her membership in the LLC by mortgage, pledge, granting of a security interest, lien or otherwise, unless the encumbrance has first been approved in writing by all other members of the LLC.
>
> Notwithstanding the above provision, any member shall be allowed to assign an economic interest in his or her membership to another person without the approval of the other members. Such an assignment shall not include a transfer of the member's voting or management rights in this LLC, and the assignee shall not become a member of the LLC.

(*Id.* p. 19-20.) The Operating Agreement is in English, and there is no indication the document provided to the Court is a translation from Chinese.[3] An exhibit to the Operating Agreement is a document titled "Chinese Agreement," which is not translated.

---

[2] Mr. Li is not related to Defendant Jing Li. Defendant Jing Li is married to co-defendant Mr. Chen.

[3] The parties do not specify whether the written Chinese in any of the documents at issue is Simplified or Traditional.

2

The second pertinent agreement is an "Internal Agreement to Form a New Company in San Francisco, California, the United States of America" ("Internal Agreement"). (*Id.* p. 7.) The Internal Agreement, of which Mr. Zhu avers he was heretofore unaware, states that "[t]hrough discussion and negotiation among Anwen Li (*Alvin Li*), *Tony Chen* (Dong Chen), and Juan Hu (*Joanne Hu*), the parties reached an [sic] unanimous agreement to form a new company (*TEETEX LLC*) in San Francisco, California. . . ." (*Id.* (emphasis in original denotes original text in English).) The agreement provides that: "The initial registered capital of [Teetex] shall be US$100,000 structured as the following: Anwen Li (*Alvin Li*) holds 60% of shares, *Tony Chen* (Dong Chen) holds 30% of shares, and Juan Hu (*Joanne Hu*) holds 10% of shares. . . ." (*Id.* (emphasis in original denotes original text in English).) The agreement notes that Mr. Li's share of capital investment is $60,000. (*Id.*)

The Internal Agreement also contains the following clause: "The Nominal Shareholders of the Company shall be *LI, Jing* (in place of *Tony Chen*), *GUAN, Xin* (in place of Juan Hu), and *ZHU, Jia Jie* (in place of Anwen Li)." (*Id.* (capitalization and emphasis in original denotes original text in English).) This agreement is dated October 29, 2012 and is signed by Mr. Chen, Mr. Li, and Ms. Hu. (*Id.* p. 9.) The top of the document as provided to the Court states "Certified Translation," but the document is not accompanied by a certification from the translator.

The third agreement is an "Assignment." (*Id.* at 44.) This document states[4]: "THIS ASSIGNMENT is made and executed between Xin Guan, member of the Teetex LLC ("Assignor") and Jiajie Zhu, member of the Teetex, LLC ("Assignee") dated on August 28, 2014. Assignor does hereby assign, transfer[,] and convey to Assignee, without consideration, 10% of the membership interest in Teetex LLC." (*Id.* (capitalization in original).) Mr. Guan signed below this text. (*Id.*) Under "Acceptance of Assignment," the following appears: "I accept the above assignment of 10% of the membership interest in Teetex LLC and agree to hold it subject to the provision of the operation agreement for Teetex LLC." (*Id.*) Under "Agreement Regarding Transfer of [M]embership Interest," the document states:

---

[4] Chinese characters appear underneath the quoted English text in the copy of the Assignment submitted to the Court.

> On or about August 28, 2014, Mr. Xin Guan as member of Teetex LLC ("LLC") agreed to transfer all his right, title, and interest in the LLC, 10% membership interest in the LLC to Jiajie Zhu without consideration. After this transfer, Jiajie Zhu has 70% membership interest in the LLC, Jing Li has 30% membership interest in the LLC, Xing Guan is no longer the member of the LLC. All parties to the transfer hereby and all members in the LLC acknowledge and consent to such transfer.

(*Id.* p. 45.) Mr. Zhu, Ms. Li, and Mr. Guan's signatures all appear at the bottom of this document. (*Id.*)

The fourth agreement is titled "Sale of Teetex, LLC Interest Agreement" ("Sale Agreement"). (*Id.* p. 25.) The Sale Agreement was signed by Mr. Zhu and Ms. Li. (*Id.*) Mr. Zhu is described as a "70% Member of Teetex, LLC" and "Seller," and Ms. Li is described as "a 30% Member of Teetex, LLC" and "Purchaser." (*Id.*)

In the recitals portion of the Sale Agreement, Mr. Zhu is described as "the beneficial and record owner of 70% membership interest in Teetex, LLC." (*Id.*) Under the terms of the Sale Agreement, Ms. Li was to "cause" Teetex to pay Mr. Zhu "his 70% share" of Teetex's "undistributed profits and losses accumulated as of June 7, 2016." (*Id.*) A schedule for these payments to Mr. Zhu is set out in a section titled "Purchase Consideration and Payments." (*Id.* p. 26.) A table in the Sale Agreement describes Mr. Zhu's interests in Teetex prior to sale as 70% and after the sale as 0%. (*Id.* p. 30.) Further, under a subsection titled "Debt Repayments," Teetex was to "repay" its debt by transferring discrete sums of money (plus interest), to Mr. Li over the course of approximately three months. (*Id.*)

Finally, the Sale Agreement has a provision that states the agreement and its attachments "constitute the entire agreement and understanding between the parties and supersede any prior agreement and/or understanding relating to the subject matter of this Agreement." (*Id.* p. 33.) The Sale Agreement was signed by Ms. Li and Mr. Zhu on August 8 and 10, 2016, respectively. (*Id.* p. 35.) This agreement appears to have been drafted in English, and there is no indication that the document submitted to the Court is a translation.

Defendants argue that the Internal Agreement controls and informs the meaning and effect of each of the other three agreements. Defendants maintain that the Internal Agreement identifies

the true members of Teetex, and, therefore, Mr. Li, and not Mr. Zhu, was a member holding 60% (and later 70%) of Teetex's shares. Resting on the premise that Mr. Li was—and Mr. Zhu was not—a member, Defendants argue that Mr. Li could not have validly transferred his shares to Mr. Zhu because Mr. Li did not follow the protocol outlined in the Operating Agreement for transferring shares. Accordingly, Defendants maintain that, because Mr. Zhu was never a member, Mr. Zhu lacks standing to bring the above-captioned action. Mr. Zhu disputes the authenticity of the Internal Agreement and argues that the terms of the Operating Agreement, Assignment, and Sale Agreement—each of which he signed—speak for themselves.

The Court will address additional facts as necessary in its analysis.

## ANALYSIS

**A.  Applicable Legal Standards.**

Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Article III of the Constitution requires that a plaintiff have standing to assert claims in federal court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Challenges to Article III standing implicate a court's subject matter jurisdiction and therefore are properly raised under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "Federal courts are courts of limited jurisdiction," and "[i]t is to be presumed that a cause lies outside this limited jurisdiction" unless otherwise shown. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

To establish standing, a plaintiff has the burden to demonstrate (i) that he suffered an injury-in-fact (ii) which resulted from the defendant's conduct and (iii) that a favorable ruling would redress the injury. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted). Where a challenge is to the plaintiff's standing as alleged in a complaint, the challenge is known as a facial challenge. *Id.* In a factual attack on subject matter jurisdiction, the party challenging standing disputes the truth of allegations that otherwise would invoke federal jurisdiction. *Id.* Once the moving party "converts" a motion to dismiss for lack of standing into a factual challenge by submitting evidence to the court, the party opposing the motion must furnish evidence necessary to "satisfy its burden of establishing subject matter jurisdiction." *Id.*

5

(quotations omitted). Defendants' motion is a factual attack.

**B.     Analysis.**

   **1.     Request for Judicial Notice.**

Mr. Zhu requests judicial notice of seven documents. Four of these documents are documents filed in San Mateo Superior Court; three are Teetex corporate documents available on the California Secretary of State's website. (*See* Dkt. No. 20.) Under Federal Rule of Evidence 201, a court may take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* Though a court may take judicial notice of matters of public record and properly consider those matters when evaluating a motion to dismiss, a court may not take judicial notice of disputed facts contained in such public records. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quotations and citations omitted).

Both the court documents and the corporate documents Mr. Zhu presented are the types of documents of which courts routinely take judicial notice. *See, e.g.*, *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (judicial notice of court documents); *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1232 (W.D. Wash. 2003) (judicial notice of articles of incorporation as public records kept by Secretary of State). As explained below, the Court need not rely on these documents for its analysis. Nonetheless, as Mr. Zhu's request is unopposed, the Court GRANTS his request for judicial notice. The Court takes judicial notice of the fact that these documents are publicly-available in the form presented to the Court, and the Court takes judicial notice of the fact of the documents' contents, but the Court does not take judicial notice of the contents of the documents as facts. *See Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1073 (N.D. Cal. 2013).

   **2.     Contractual Interpretation And Standing.**

The issue at hand is far simpler than the parties make it out to be.

California Evidence Code section 622 provides that "[t]he facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors

6

in interest. . . ." Section 622 is a codification of the doctrine of estoppel by contract, which is the principle that "parties who have expressed their mutual assent are bound by the contents of the instrument they have signed[] and may not thereafter claim that its provisions do not express their intentions or understanding." *City of Santa Cruz v. Pac. Gas & Elec. Co.*, 82 Cal. App. 4th 1167, 1176–77 (2000) (citation omitted).

The dispute alleged in the FAC and each of the causes of action contained therein arise from or concern events leading up to the execution of the Sale Agreement, which Ms. Li and Mr. Zhu signed. The Sale Agreement not only states that Mr. Zhu is a member, but, more specifically, the agreement states that he was a "70% Member of Teetex" and "the beneficial and record owner of 70% membership interest" in Teetex. Under the doctrine of estoppel by contract, Ms. Li is estopped from arguing that these statements are incorrect. This alone would be sufficient to defeat Defendants' motion: as the erstwhile "beneficial and record" owner of 70% of Teetex's shares, and as a signatory to the Sale Agreement, Mr. Zhu has standing to bring the claims he has alleged.[5]

The Operating Agreement and Assignment are in accord. The Operating Agreement, signed by Mr. Zhu, Ms. Li, and Mr. Guan (a non-party), identifies Mr. Zhu as a "member." The Assignment, signed by the same three individuals, also identifies Mr. Zhu as a "member" and states that, following the transfer the Assignment memorializes, Mr. Zhu had a "70% membership interest in the LLC."

The only document that suggests Mr. Zhu is not a member is the Internal Agreement. The copy of the Internal Agreement submitted to the Court, as noted above, is a translation unaccompanied by an affidavit from the translator. A translated document must be properly authenticated, and any translation must be shown to be accurate and done by a competent translator. *See* Fed. R. Evid. 604, 901; *see also Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 659 (N.D. Cal. 1994) (declining to consider translated document where statement

---

[5] It is worth noting that Mr. Zhu has stated that partial payment of money for these shares was sent to him and not to Mr. Li, (Dkt. No. 19 (Declaration of Jiajie Zhu at ¶ 25), and that the Sale Agreement provides for separate payments to Mr. Li—not for the transfer of the shares, but for the repayment of "Company Debt" (Dkt. No. 17-1 p. 26).

accompanying translation was not sworn, did not describe the translator's qualification or expertise regarding language translation, and did not identify the translator). Courts routinely exclude translated documents where such documents are not paired with an affidavit from the translator. *See, e.g.*, *M&Z Trading Corp. v. Hecny Grp.*, 41 F. App'x 141, 143 (9th Cir. 2002) ("Without providing any affidavits or testimony regarding the competency of the translators for the translations it submitted, [plaintiff] failed to satisfy the accuracy and reliability requirements of Rule 901."); *Ruiz v. APCO Const.*, No. 10-cv-1312-JAD-GWF, 2014 WL 2741547, at *3 n.6 (D. Nev. June 17, 2014) (excluding documents from consideration where translated documents "want[ed] for an affidavit from the translator attesting to a true and correct translation"); *United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, Cal.*, No. 04-cv-2788-ABC-PLA, 2007 WL 5559351, at *5 (C.D. Cal. Mar. 13, 2007) (declining to consider Korean contract with English translation because translation not certified), *aff'd sub nom. United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills California*, 298 F. App'x 545 (9th Cir. 2008), and *aff'd in part, rev'd in part sub nom. United States v. DAS Corp.*, 406 F. App'x 154 (9th Cir. 2010). Mr. Chen's declaration is insufficient: it only states that the copy provided is a "true and correct" copy of the certified English translation and says nothing about the translator or his or her expertise. The Internal Agreement, therefore, is not properly authenticated.

Even if the Internal Agreement were properly authenticated, it would not defeat Mr. Zhu's standing. The Operating Agreement, executed a day before the Internal Agreement, names "members," including Mr. Zhu. The Operating Agreement also provides a mechanism for transferring membership. The subsequent Internal Agreement does not follow that mechanism because it does not reflect agreement by non-transferring members. The only signatories to the Internal Agreement are non-signatories to the Operating Agreement, and the explicit language of the Operating Agreement does not grant power to non-signatories to reclassify membership in Teetex.

To the extent Mr. Chen's declaration contradicts the terms of the three properly authenticated agreements, Mr. Chen's declaration runs afoul of the parol evidence rule, as codified in California Civil Code section 1625. This rule "generally prohibits the introduction of any

extrinsic evidence, whether oral or written, to vary, alter[,] or add to the terms of an integrated written instrument." *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343 (2004) (quotation and citation omitted). The Operating Agreement and Sale Agreement are both integrated agreements. (*See* Dkt. No. 17-1 p. 22, p. 33.) It would therefore be improper to introduce extrinsic evidence to alter the terms of either agreement.

Defendants' argument that the Operating Agreement is modified by the Internal Agreement is not persuasive. The Operating Agreement's integration clause states that it shall not be "amended, modified[,] or replaced except by a written instrument executed by all the parties to this agreement who are current members of the LLC as well as any and all additional parties who became members of this LLC after the adoption of this agreement." (*Id.* p. 22.) The Internal Agreement does not modify the Operating Agreement because the Internal Agreement is not signed by the parties to the Operating Agreement and then-current members of Teetex.

The Court need not reach Mr. Zhu's other evidentiary objections.

Finally, Defendants mention only in passing their position that Mr. Li is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. As Defendants did not brief this issue fully—or brief why the FAC should be dismissed under 12(b)(7)—the Court declines to address the merits of this argument.

**CONCLUSION**

For the reasons explained above, Defendants' motion to dismiss is DENIED. The Court sets an initial case management conference for January 24, 2020 at 11:00 a.m. The parties' joint case management statement is due January 17, 2020.

**IT IS SO ORDERED.**

Dated: November 15, 2019

_____
JEFFREY S. WHITE
United States District Judge

9