UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIAJIE ZHU,<br><br>    Plaintiff,<br><br>  v.<br><br>JING LI, et al.,<br><br>    Defendants. | Case No. 19-cv-02534-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS AND REQUIRING SUPPLEMENTAL SUBMISSION**<br><br>Re: Dkt. No. 224 |

Now before the Court for consideration is the motion for attorney's fees and costs filed by Plaintiff Martin Zhu ("Plaintiff"). The Court has considered the parties' papers, relevant legal authority, and the record in the case, and it finds this matter suitable for disposition without oral argument. For the following reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Plaintiff's motion. The Court ORDERS Plaintiff to submit a supplemental statement regarding the request for attorney's fees and costs by August 8, 2023.

## BACKGROUND

Plaintiff filed this case on May 10, 2019. (Dkt. No. 1.) The case proceeded to trial, and the jury found in favor of Plaintiff on his claims for breach of contract, breach of fiduciary duty, and intentional misrepresentation. Judgment was entered on May 2, 2023. (Dkt. No. 221.)

Plaintiff now seeks an award of $376,373 in attorney's fees and an award of $91,654.20 in costs. Plaintiff argues he is entitled to recover his attorney's fees and costs based on the indemnification provision of the Purchase and Sale Agreement ("PSA"). That provision provides:

> 4.4 Indemnification. Purchaser will indemnify, defend, and hold Seller harmless from and pay any and all losses, costs, damages, claims, obligations, liabilities, and expenses (including, without limitation, all reasonable attorneys' fees and costs) (collectively, "Claims"), directly or indirectly resulting from, relating to, arising out

> of or attributable to any of the following: (a) any breach, violation or default by Purchaser of any covenant, agreement or obligation of Purchaser in this Agreement; and (b) any legal responsibility, claims, debts, and/or liabilities whatsoever incurred by or in connection with the Company after the Cut-off Date.

(Dkt. 224-1, Declaration of Brian Irion iso Motion for Fees ("Irion Decl.") ¶ 23, Ex. 10 ("PSA") at § 4.4.)

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

**A.   Applicable Legal Standard.**

Under the "American rule," litigants generally must pay their own attorney's fees in absence of a rule, statute, or contract authorizing such an award. *See Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975); *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1280-81 (9th Cir. 1999). In diversity case, state law governs entitlement to attorney's fees, but federal law dictates the procedure for requesting attorney's fees. *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007); *see also MRO Commc'ns, Inc.*, 197 F.3d at 1280-81 (explaining that Rule 54(d)(2) creates a procedure to request attorney's fees, not a right to recover attorney's fees).

Federal Rule of Civil Procedure 54(d) governs requests for attorney's fees and nontaxable costs. Rule 54(d) provides that, unless a statute or court order provides otherwise, a prevailing party seeking attorney's fees must meet the following four requirements: (1) file the motion no later than 14 days after the entry of judgment; (2) specify the judgment and the statute, rule, or other grounds entitling the movant to the award; (3) state the amount sought or provide a fair estimate of it; and (4) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made. Fed. R. Civ. P. 54(d)(2).

**B.   The Attorney's Fee Provision in the Indemnification Clause Applies.**

Defendants argue the indemnification provision does not apply to Plaintiff's request for attorney's fees because a more specific attorney's fee provision controls. Defendants rely on Section 5.5.1 of the PSA, which is titled "Mediation and Arbitration" and states:

> Mediation and Arbitration. In any dispute over the provisions of this Agreement, if the parties cannot resolve the dispute to their mutual

2

> satisfaction, the matter may be submitted to mediation…All parties shall initially share the cost of arbitration, but the prevailing party of parties may be awarded attorney fees, costs and other expenses of arbitration.

(PSA § 5.5.1.)

Defendants rely on *California Union Square L.P. v. Saks & Co., LLC*, 71 Cal. App. 5th 136 (2021), to support the argument that the language of the arbitration provision contradicts and controls over the language of the indemnification provision. In *California Union Square*, Saks leased a department store building from Union Square. The lease agreement required the base rent to be reset at "fair market rent" for each lease renewal period, and if the parties could not agree to the "fair market rent," the agreement mandated an arbitration process for settling disputes about the fair market rent. 71 Cal. App. 5th at 139. The fair market rent arbitration clause provided that "[t]he attorneys' fees and expenses of counsel for the respective parties and of witnesses shall be paid by the respective party engaging such counsel or calling such witnesses." *Id*. The lease agreement also contained a series of "Miscellaneous" provisions, including one for "attorneys' fees, which stated: "[s]hould either party institute any action or proceeding to enforce this Lease or any provision hereof…the prevailing party in any such action or proceeding shall be entitled to receive from the other party all costs and expenses, including reasonable attorneys' fees." *Id.* at 139-40. After the parties were unable to agree to a fair market rent, they engaged in arbitration pursuant to the process for settling disputes about the fair market rent value as set forth in the agreement. *Id.* at 140. Saks subsequently sought attorneys' fees incurred in judicial proceedings ancillary to the arbitration based on the attorneys' fees clause in the "Miscellaneous" provision. *Id.* at 142. The court denied the request for attorneys' fees because the judicial proceedings conducted in connection with the arbitration awards were not actions to "enforce" the lease agreement. *Id*. The court determined that even if the "Miscellaneous" attorneys' fee provision applied to court proceedings involving the lease, it would not apply to arbitral disputes regarding the fair market rent. In those situations, the more specific fair market rent dispute resolution process would control because the language and context of that provision did not limit it to amounts incurred solely in and during an arbitration proceeding. *Id*. at 143-144.

Defendants' reliance on *California Union Square* is misplaced because the contract and

nature of the dispute there differ from that at issue here. While the contract in *California Union Square* required the parties to arbitrate disputes about fair market rent, the PSA's dispute resolution provision allows for, but does not require, arbitration. Nothing in the agreement precludes Plaintiff from choosing to bring his claims in court, rather than arbitration. The attorneys' fee clause in the mediation and arbitration provision, which sets forth the process for an optional mediation or arbitration scenario, is expressly limited to costs and expenses incurred in arbitration. Thus, the two attorneys' fees provisions are not inconsistent, and the attorneys' fees clause in the arbitration provision has no applicability here because the parties did not choose to proceed through arbitration. Moreover, Plaintiff's contract claim arises from the alleged breach of the PSA. Thus, to the extent any inconsistency does exist, the attorneys' fees clause in the indemnification provision, which expressly refers to actions arising from breaches of the PSA, would be the controlling provision here.

### C.   Plaintiff Is Entitled to Attorney's Fees for the Breach of Contract Claim.

Civil Code section 1717, subdivision (a), provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

Plaintiff contends that he is entitled to attorney's fees for his breach of contract claim based on the indemnity provision in the PSA. Defendants assert that provision of the PSA applies only to third-party claims and is not an attorney's fee provision within the meaning of Section 1717.

If a cause of action is "on a contract," and the contract provides that the prevailing party shall recover attorneys' fees incurred to enforce the contract, then attorneys' fees must be awarded on the contract claim in accordance with Civil Code section 1717. *Santisas v. Goodin*, 17 Cal. 4th 599, 615-617 (1998).

Defendants do not dispute that Plaintiff is the prevailing party. There is also no meaningful dispute that Plaintiff's breach of contract claim is a cause of action "on a contract."

4

Thus, the question is whether the indemnification provision in the PSA constitutes a unilateral attorneys' fee provision within the meaning of Section 1717, which would make the provision reciprocal and applicable to the entire agreement. *Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 968 (1993).

California courts presume that "[a] clause that contains the words 'indemnify' and 'hold harmless' generally obligates the indemnitor to reimburse the indemnitee for any damages the indemnitee becomes obligated to pay third persons—that is, it relates to third party claims, not attorney fees incurred in a breach of contract action between the parties to the indemnity agreement itself." *Alki Partners, LP v. DB Fund Servs., LLC*, 4 Cal. App. 5th 574, 600. However, courts also look to "the context in which the language appears." *Id.* A contract, therefore, can rebut this presumption with language that "specifically provide[s] for attorney's fees in an action on the contract." *Id.* at 600-01 (emphasis omitted) (citation omitted).

For example, the California Courts of Appeal determined an indemnification clause was not limited to third-party claims where the clause obligated the defendant to indemnify against "any and all" damages and losses incurred by the plaintiffs "that arise from or are in connection with…[a]ny breach or default by [the defendant] of its covenants or agreements contained" in the contract. *Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1027 (2011).

Similarly, in *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547 (2004), the indemnity provision provided that the buyer would indemnify the seller against "(a) any breach by buyer of any representations or warranties made in the Contract; (b) any breach of any covenant in the Contract or ancillary documents; and (c) all liabilities buyer assumed." *Id*. at 554. The court determined the language was sufficiently broad to encompass claims between the parties and was not limited to third-party claims.

Recently, the Ninth Circuit addressed this issue in *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946 (9th Cir. 2023). In that case, Apple sought attorneys' fees from Epic based on an indemnification provision which obligated Epic to "indemnify and hold harmless, and upon Apple's request, defend, Apple[ ] ... from any and all claims, losses, liabilities, damages, taxes, expenses and costs, including without limitation, attorneys' fees and court costs ..., incurred by

5

[Apple] and arising from or related to" several enumerated grounds." *Id*. at 1004. One of the grounds was a "breach of any certification covenant, obligation, representation or warranty" in the agreement. *Id.* The Ninth Circuit found the provision "rebut[ted] the *Alki Partners* presumption by 'specifically provid[ing] for attorney's fees in an action on the contract,'" and thus, held that Apple was entitled to attorneys' fees for its breach of contract claim. *Id.*

The language in the indemnification provision here closes parallels the language found in *Epic Games*, *Zalkind*, and *Dream Theater*, and the Court finds the reasoning in those cases instructive. The indemnification provision in the PSA requires the purchaser to "indemnify, defend, and hold Seller harmless from and pay any and all losses, costs, damages, claims, obligations, liabilities, and expenses (including, without limitation, all reasonable attorneys' fees and costs) (collectively, "Claims"), directly or indirectly resulting from, relating to, arising out of or attributable to…any breach, violation or default by Purchaser of any covenant, agreement or obligation of Purchaser in this Agreement." PSA § 4.4. This language, which is substantially similar to that in *Epic Games*, specifically provides for attorneys' fees in an action on the contract and is not limited to third-party claims. Defendants also contend that the context of the PSA supports limiting the indemnification provision to third-party claims, but they have not made a compelling argument as to why that is the case. Thus, the Court finds the language of indemnification provision is broad enough to encompass intra-party disputes and is not limited to third-party claims. Plaintiff may recover attorneys' fees pursuant to that provision for his breach of contract claim.

D.  **Plaintiff Cannot Recover Attorney's Fees for Tort Claims.**

Defendants argue that even if the indemnification clause permits Plaintiff to recover attorney's fees for the breach of contract claim, it does permit recovery of attorney's fees for tort claims. Plaintiff argues that the attorney's fee clause in the indemnification provision entitles him to recover attorney's fees for his tort claims pursuant to Civil Code section 1021.

Section 1717 does not apply to tort claims; it determines which party, if any, is entitled to attorneys' fees on a contract claim only. *Santisas*, 17 Cal. 4th at 615, 617, 619. Section 1021, however, provides that: "Except as attorney's fees are specifically provided for by statute, the

measure and mode of compensation of attorneys…is left to the agreement, express or implied, of the parties…" Thus, "[i]f a contractual attorney fee provision is phrased broadly enough…it may support an award of attorney fees to the prevailing party in an action alleging both contract and tort claims." *Santisas*, 17 Cal. 4th at 608; *see also Xuereb v. Marcus & Millichap, Inc.*, 3 Cal. App. 4th 1338 (1992) ("[P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or contract.").

Here, Plaintiff's claims for breach of fiduciary duty and intentional misrepresentation sound in tort. Thus, the question is whether the language of the indemnification provision permitting attorneys' fees is broad enough to encompass Plaintiff's tort claims.

To answer this question, the Court applies the ordinary rules of contract interpretation. "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation….Such intent is to be inferred, if possible, solely from the written provisions of the contract….The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage"…, controls judicial interpretation….Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.'" *Santisas*, 17 Cal. 4th at 608 (citations omitted).

In *Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th 698 (1998), the court discussed whether the plaintiff was permitted to recover attorneys' fees for breach of fiduciary duty and constructive fraud tort claims based on a provision in a lease agreement, which provided for an award of attorneys' fees to the prevailing party in any action or proceeding to enforce the terms of the lease or declare rights under the lease. *Id.* at 708-09. The court found the tort claims did not fall within the category of actions brought to "declare rights under the lease" for several reasons, including because the "tort claims were premised on a duty that arose without regard to the terms of the lease and before the lease existed." *Id.* at 711. Thus, the court concluded that the plaintiff's "pursuit of the tort claims did not seek to 'declare rights [] under' the lease" and thus, the contractual attorneys' fee provision was not broad enough to support an award for tort claims.

7

*Id.*

Although the attorneys' fees provision in *Exxess Elecontrixx* differed from the one at issue here, the Court finds the reasoning informative. Here, the attorneys' fees provision is limited to fees and costs "directly or indirectly resulting from, relating to, arising out of or attributable to… any breach, violation or default by Purchaser of any covenant, agreement, or obligation of Purchaser in this Agreement." Plaintiff's tort claims for breach of fiduciary duty and intentional misrepresentation, however, did not "aris[e] out of" any breach or violation of the PSA. Rather, the tort claims were premised on Defendants' misrepresentations about the actual profits and value of Teetex. Defendants' duty to disclose that information arose from their fiduciary relationship to Plaintiff; it was not created by the PSA. Defendants had a duty to disclose the value of Teetex regardless of the substance or existence of the PSA. Additionally, the misrepresentations at the core of Plaintiff's tort claims occurred prior to the creation of the PSA. Thus, as in *Exxess Elecontrixx*, Plaintiff's tort claims are "premised on a duty that arose without regard to the terms of the [PSA] and before the [PSA] existed," and are not encompassed by the attorneys' fee provision in the indemnification clause. *Id.* at 711.

Plaintiff cites several cases where courts have found contractual fee provisions supported awards of attorneys' fees for tort claims. For example, in *Xuereb v. Marcus & Millichap, Inc.*, the court found a provision permitting the prevailing party to recover its attorneys' fees and costs in any "lawsuit or other legal proceeding" to which the agreement "gives rise" was not limited to awards of attorneys' fees in actions brought on a breach of contract theory. 3 Cal. App. 4th 1338, 1342-43 (1992). Similarly, in *Thompson v. Miller*, the agreement contained an attorneys' fees provisions that provided: "The prevailing party in any dispute under this Agreement shall be entitled to reasonable attorneys' fees incurred in such dispute." 112 Cal. App. 4th 327, 333 (2003). The court determined that language was broad enough to recover attorneys' fees for tort claims because it encompassed "[a]ny conflict concerning the effect of the agreements." *Id*. at 337.

The cases Plaintiff cites are distinguishable because the attorneys' fee provision here is more narrowly drawn than in those cases. To show he is entitled to attorneys' fees for his tort

8

claims, Plaintiff must show that his claims for intentional misrepresentation and breach of fiduciary relate to, arise from or are attributable to a breach of the PSA. In the Court's view, he cannot do so. As discussed above, the tort claims are premised on a duty separate from any duty set forth in the PSA. Plaintiff does not meaningful address this issue in his papers. He lumps the contract claims and tort claims together without acknowledging these distinctions and explaining why the language of the attorneys' fee provisions is nevertheless broad enough to encompass his tort claims.

Thus, the Court concludes that Plaintiff's tort claims do not fall within the scope of the attorneys' fee provision in the PSA and denies the request for attorney's fees for Plaintiff's tort claims pursuant to Civil Code 1021.

### E. Plaintiff Can Recover Costs and Expenses for His Contract Claim.

Plaintiff seeks costs in an amount beyond that permitted under 28 U.S.C. sections 1821 and 1920 on the grounds that the PSA provides that Defendant Li agreed to pay "all costs" and "all expenses." (PSA § 4.4.) The Ninth Circuit has determined that the cost limitations of Section 1821 and Section 1920 "do not control" when a contractual right permits the recovery of costs. *Hobson v. Orthodontic Centers of Am. Inc.*, 220 Fed. App'x 490, 491 (9th Cir. 2007). Thus, the Court finds that Plaintiff is not limited to costs outlined in Section 1920 and Section 1821. However, because the attorneys' fee provision does not encompass Plaintiff's tort claim, Plaintiff is entitled to costs and expenses only to the extent that they relate to work for the breach of contract claim.

### F. Chen is Liable for Attorneys' Fees.

Defendants also argue that Defendant Chen is not liable for attorney's fees and costs under the PSA. Defendant Chen signed a personal guarantee, which provides that as Guarantor, he will be jointly and severally liable with Purchaser for all Payment Obligations under the Agreement. (PSA, Ex. A.) Defendants argue that the term "Payment Obligations" does not include fees, costs, or attorney's fees.

The Court disagrees. Courts have found that when the litigation involves a claim that a non-signatory party is an assignee or guarantor of the contract containing the attorneys' fees

provision, the contractual attorneys' fees provision properly extends to the assignee or guarantor who is bound by the terms of the contract even if the guarantee does not include an attorneys' fees clause. *Niederer v. Ferreira*, 189 Cal. App. 3d 1485, 1505-1506 (1987). The Court finds this principle applicable here particularly given Defendants have not provided any legal citations in support of their argument. Additionally, the guarantee here includes a provision addressing reimbursement of costs and expenses, and Defendants do not address the impact of that provision on their argument. On this basis, the Court finds Defendants' argument regarding Chen's liability for fees unpersuasive.

**G.     A Reduction in the Requested Award is Warranted.**

Plaintiff's request for fees includes time and money spent on his contract and tort claims. Plaintiff contends even if the attorney's fee provision is limited to his contract claims, a reduction of his requested award for non-contractual claims should not occur because of the overall results obtained in this litigation. Plaintiff's cited authorities address circumstances in which courts did not reduce attorneys' fees where the party obtained excellent results overall but did not prevail on every contention in the lawsuit. *See, e.g.*, *Davis v. Mason County*, 927 F.2d 1473, 1489 (9th Cir. 1991). That is not the issue here, however, where Plaintiff has failed to establish an entitlement to attorney's fees for his tort claims.

Because the Court has concluded that Plaintiff is entitled to attorney's fees and costs related only to his breach of contract claim, the Court believes a reduction of the requested award is warranted. The Court ORDERS Plaintiff to file a supplemental statement presenting a revised accounting of the request that is limited to work related to the breach of contract claim. Plaintiff shall file the supplemental statement by August 8, 2023.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, in part, and DENIES, in part, Plaintiff's motion for an award of attorney's fees and costs. Plaintiff may recover attorney's fees and costs for work related to his breach of contract claim. Plaintiff's request to recover attorney's fees and costs for work related to his tort claims is denied. Plaintiff shall file a supplemental statement providing a revised accounting of the request for attorneys' fees and costs limited to fees and costs

incurred in connection with the breach of contract claim by August 8, 2023. The Court will issue a separate order establishing the amount of the award after it receives and considers Plaintiff's supplemental submission. If Plaintiff fails to timely file a supplemental statement, the Court will apply its own reduction to the amount sought based on the argument and evidence already in the record.

**IT IS SO ORDERED.**

Dated: July 26, 2023

JEFFREY S. WHITE
United States District Judge