UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIAJIE ZHU,<br><br>    Plaintiff,<br><br>    v.<br><br>JING LI, et al.,<br><br>    Defendants. | Case No. 19-cv-02534-JSW<br><br>**ORDER DENYING, IN PART, AND CONDITIONALLY DENYING, IN PART, MOTION FOR NEW TRIAL**<br><br>Re: Dkt. No. 231 |

Now before the Court for consideration is the motion for new trial filed by Defendants Jing Li and Tony Chen ("Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in the case, and it finds this matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the following reasons, the Court DENIES the motion for new trial on the intentional misrepresentation and breach of fiduciary duty claims and CONDITIONALLY DENIES the motion for new trial as to the breach of contract claim and punitive damages award.

**BACKGROUND**

In this action, Plaintiff Martin Zhu ("Plaintiff") sued Defendants, alleging intentional misrepresentation, negligent misrepresentation, breach of fiduciary duty, and breach of contract. Plaintiff claimed that Defendants misrepresented the value of Teetex, which caused Plaintiff to sell his interest in Teetex for less than its worth. Plaintiff also alleged that Defendant Li failed to pay Plaintiff for his share of undisputed profits in breach of the Purchase and Sale Agreement ("PSA").

The case proceeded to a jury trial. The jury rendered a verdict in Plaintiff's favor on the claims for intentional misrepresentation, breach of fiduciary duty, and breach of contract. The

jury awarded Plaintiff $1,329,0778.78 in damages on the tort claims and $886,951.00 on the breach of contract claim. The case proceeded to a punitive damages phase, and the jury awarded $53,945.00 in punitive damages. The Court directed the parties to meet and confer about the form and content of a proposed final judgment. Plaintiff lodged a proposed final judgment, which the Court adopted over Defendants' objections and entered on May 2, 2023.

Now, pursuant to Federal Rule of Civil Procedure 59(a), Defendants move for a new trial on the intentional misrepresentation and fiduciary duty claims, the breach of contract claim, and the punitive damages award.

The Court will discuss additional facts as necessary in the analysis.

## ANALYSIS

### A.   Applicable Legal Standard

Rule 59 authorizes new trials "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The court may grant a new trial, even if the verdict is supported by substantial evidence, if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent ... a miscarriage of justice." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999). Courts may also grant a new trial where the amount of damages is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996).

"Regarding a Rule 59 motion, the district court can weigh the evidence, make credibility determinations, and grant a new trial for any reason necessary to prevent a miscarriage of justice." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 841 (9th Cir. 2014). Pursuant to Rule 59(b), a motion for a new trial "must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(b).

### B.   The Breach of Contract Damages Will Be Remitted.

The jury awarded damages in the amount of $886,951.00 against Defendant Jing Li for breach of contract in failing to pay Plaintiff his share of Teetex's profits for the first half of 2016. Defendants argue the breach of contract award is excessive and warrants remittitur or a new trial.

2

Defendants ask the Court to either order Plaintiff to accept damages in the sum of $17,099 or order a new trial on the breach of contract claim.

In the Ninth Circuit, in reviewing a jury's damages award, the district court must uphold the jury's "finding of the amount of damages unless the amount is 'grossly excessive or monstrous,' clearly not supported by the evidence, or 'only based on speculation or guesswork.'" *Handgards, Inc. v. Ethicon, Inc.,* 743 F.2d 1282, 1297 (9th Cir. 1984). The district court may grant a new trial on damages even though substantial evidence supports the jury's verdict. *Oltz v. St. Peter's Community Hospital,* 851 F.2d 1440, 1452 (9th Cir. 1988).

When reviewing a claim of excessive damages, a district court, after viewing the evidence in a light most favorable to the prevailing party, determines that the damages award is excessive, it has two alternatives. It may grant the motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur. *Fenner v. Dependable Trucking Co., Inc.,* 716 F.2d 598, 603 (9th Cir. 1983). The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified. *Id.* The standard to be applied by the trial court in remitting a judgment is to the maximum amount sustainable by proof. *D. & S. Redi-Mix v. Sierra Redi-Mix & Contracting Co.,* 692 F.2d 1245, 1249 (9th Cir. 1982). This rule prevents the Court's substitution of its judgment for that of the jury. *Bonura v. CSEA Land Service, Inc.,* 505 F.2d 665, 669 (5th Cir. 1974); *see also, Informatica Corp. v. Business Objects Data Integration, Inc.,* No. C 02 03378 EDL, 2007 WL 2344962, at *4 (N.D. Cal. Aug. 16, 2007). Here, the jury was instructed that if it found for Plaintiff on the breach of contract claim, it would also have to decide how much money would reasonably compensate Plaintiff for the harm caused by the breach. The jury was instructed that the purpose of the damages was to put Plaintiff in as good a position as he would have been if Defendant Li had performed as promised. The jury was instructed that to recover damages for the breach of contract, Plaintiff had to prove the amount due under the contract. The jury was also instructed that Plaintiff did not have to prove the exact amount of damages.

At trial, Plaintiff relied on the testimony of Defendants' CPA, Kevin Huang, to establish that was the amount due to Plaintiff under the contract for his share of profits for the first half of

2016 was $129,306.00.  The jury also heard evidence that the amount owed to Plaintiff should be reduced because Teetex had overpaid Plaintiff's personal taxes.  The jury considered evidence of a check in the amount of $53,945.65, which Plaintiff had received from Defendants during trial.  Based on this evidence, during closing, Plaintiff's counsel argued that Plaintiff should have received $48,166.00 under the contract, which amounted to $71,045 with interest.  Plaintiff argued that because he received the check for $53,946.00 from Defendants, and he was now due $17,099 for the breach of contract claim.

On this basis, the Court agrees with Defendants that the award of $886,951 is excessive and not supported by the evidence.  The awarded amount is over fifty times greater than the amount Plaintiff showed he was due under the contract at trial.  Plaintiff posits that the jury could have reached the award of $886,951 by relying on Plaintiff's estimate of the profits of Teetex for the first half of 2016, adding the undistributed profits from 2015, and then extrapolating from those numbers estimated amounts for the years 2013 and 2014 to reach an amount that, with interest, would justify the $886,951 awarded.  There is no support in the record for Plaintiff's argument.  Moreover, as discussed above, at trial Defendants' CPA testified that the amount due under the contract was $129,306.00.  Plaintiff now argues that amount was "completely useless and utterly valueless" to the jury, but it is difficult to credit Plaintiff's argument when he relied on that evidence at closing in asking the jury to award $17,099 for damages on the breach of contract claim, and the Court finds Plaintiff's explanation in defense of the jury's award speculative and implausible.

For these reasons, the Court finds that the jury's award of $886,951 for the breach of contract claim excessive and unsupported by the evidence.  The Court finds the maximum amount of damages sustainable by proof on the breach of contract claim is $17,099.  The Court therefore, denies Defendants' motion for a new trial on the breach of contract claim on the condition that Plaintiff accept a remittitur of $17,099.  The Court also notes that the jury unanimously found liability on the breach of contract claim, and the question of damages can be evaluated separately without disturbing the jury's finding as to liability.  Thus, if Plaintiff rejects the remittitur, any new trial on the breach of contract claim would be limited to damages.

**C.  The Court Denies the Motion for a New Trial on the Claims for Breach of Fiduciary Duty and Intentional Misrepresentation.**

The jury found Defendants' liable for breach of fiduciary duty and intentional misrepresentation. The jury awarded $357,761.87 in damages for the intentional misrepresentation claim and $971,316.91 in damages for the breach of fiduciary duty claim. Defendants move for a new trial on these claims arguing that verdict results in an impermissible double recovery and is fatally inconsistent.

Defendants argue that the judgment awards damages for the same harm under a theory of intentional misrepresentation and a theory of breach of fiduciary duty and thus, awarding damages for both claims would constitute an impermissible double recovery. "The general rule of compensatory damages bars double recovery for the same wrong." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1005-06 (9th Cir. 2008) (internal citation omitted). "The California Supreme Court has held that a plaintiff is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence." *Id.* (citing *Tavaglione v. Billings,* 4 Cal.4th 1150, 1158 (1993)).[1]

Here, the record shows that the claims for intentional misrepresentation and the breach of fiduciary duty were intended to compensate for the same economic harm: the damage caused by Defendants' misrepresentation of the profits of Teetex. Although Plaintiff argues that there were multiple breaches of fiduciary duty, he has not shown what separate economic harm those breaches caused. Thus, Plaintiff cannot recover more than once for this injury under California law. *Tavaglione*, 4 Cal. 4th at 1158.

The Court agrees with Defendants that the verdict as it stands is inconsistent because it could be understood to compensate Plaintiff twice for the same injury. Defendants argue that this inconsistency is fatal because the discrepancy between the two awards is too disparate to

---

[1] Plaintiff argues that Defendants waived any objection to the allegedly inconsistent verdict by failing to object before the jury was discharged. The cases Plaintiff cites, however, apply to general verdicts under Federal Rule of Civil Procedure 49(a). The Ninth Circuit has held that claims that a jury's answers on a special verdict form are inconsistent are not waived even if not raised prior to discharge. *Pierce v. S. Pac. Transp. Co.*, 823 F.2d 1366, 1370 (9th Cir. 1987). Thus, Defendants' failure to object to the purported inconsistency in the verdict prior to discharge will not be deemed a waiver of the argument.

reconcile. The Court disagrees.

The Court has a duty to attempt to reconcile the inconsistency in the jury's responses. "Courts have a duty under the Seventh Amendment to harmonize a jury's special verdict answers, if such be possible under a fair reading of them." *Flores v. City of Westminster*, 873 F.3d 739, 756-57 (9th Cir. 2017) (internal citations and quotation marks omitted). "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Gallick v. Baltimore & O.R. Co.*, 372 U.S. 108, 119 (1963). Thus, a court is obligated to try "to reconcile the jury's findings by exegesis, if necessary" before it can remand the case for a new trial. *Id.* A party "bear[s] a high burden to establish an irreconcilable inconsistency." *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1038 (9th Cir. 2003).

Here, the jury was instructed "out of pocket" damages, which applied to all tort theories of liability, as follows:

> [t]he amount of damages must include an award for all harm that Defendants were a substantial factor in causing, even if the particular harm could not have been anticipated. Plaintiff must prove the amount of his damages. However, Plaintiff does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages. To decide the amount of damages you must determine the value of what Plaintiff gave and subtract from that amount the value of what he received.

The verdict form, which was jointly proposed by the parties, instructed the jury to identify the amount of damages in connection with each claim. The verdict form did not mention duplicative damages.

Defendants' argument regarding the irreconcilable inconsistency of the verdict rests on the assumption that the jury understood the verdict form to call for a separate award of damages on each claim regardless of whether they were based on the same wrongdoing. However, there is another fair reading of the jury's answers that is consistent with the evidence. The verdict form establishes that the jury clearly meant to find liability against Defendants for the intentional misrepresentation and breach of fiduciary duty claims based on Defendants' misrepresentation of the value of Teetex. Based on the questions on the verdict form and the jury instructions, it is possible that the jury assigned a portion of the award for Defendants' misrepresentation to the

cause of action for intentional misrepresentation and a portion to the cause of action for breach of fiduciary duty with the intent that the awards would be aggregated. There is nothing in the record suggesting that the jury intended the awards for each claim to constitute total, separate damages for each claim (as Defendants' suggest) as opposed to partial damages that would later be aggregated to compensate for the single harm caused by Defendants' misrepresentation of the value of Teetex.

The latter view of the jury's answers is consistent with the evidence presented to the jury and the record before the Court. The evidence showed that Plaintiff received $752,500.00 for his interest in Teetex. At trial, the only evidence of the true fair value of Plaintiff's interest in Teetex came from Plaintiff's expert, who opined that Plaintiff's interest in Teetex was $2,440,000.00. Thus, Plaintiff offered evidence showing that Plaintiff received about $1,687,500.00 less than he was entitled to from Defendants, excluding interest. If aggregated, the jury's awards for intentional misrepresentation and breach of fiduciary duty amount to $1,329,078.78, which is close to the amount Plaintiff's expert testified was the difference between the fair market value of Teetex and the amount paid to Plaintiff.[2]

The fact that the jury's award is not exactly aligned with the calculation set forth by Plaintiff's expert at trial does not render the verdict fatally inconsistent. "[I]t is well-established under California law that while the *fact* of damages must be clearly shown, the *amount* need not be proved with the same degree of certainty, so long as the [finder of fact] makes a reasonable approximation." *Cardinal v. Lupo*, No. 18-CV-00272-JCS, 2020 WL 1694355, at *3 (N.D. Cal. Apr. 7, 2020), *aff'd*, No. 20-16364, 2021 WL 4027803 (9th Cir. Sept. 3, 2021) (quoting *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1443 (9th Cir. 1990)). The jury might reasonably have concluded that Plaintiff was entitled to $1.3 million as the difference between his ownership stake in Teetex minus the amount he had already been paid based on the expert's testimony, the evidence regarding the tax returns, and any other evidence the jury may have considered relevant.

---

[2] At trial, Plaintiff requested approximately $2.4 million in damages for the tort claims, which represented the $1.6 million difference calculated by Plaintiff's expert plus interest. The jury was instructed that it was in their discretion to award interest. (Dkt. No. 205 at 35.)

Moreover, the jury's decision to apportion a larger share of the damages for the injury caused by Defendants' misrepresentation of Teetex's value to the breach of fiduciary duty claim can also be reconciled with the presentation of the questions on the verdict form. For example, with regard to intentional misrepresentation, the verdict form asked the jurors to determine if Defendants made a false representation about the profits of Teetex for 2015. (*See* Dkt. No. 213 at 3.) For the breach of fiduciary duty claim, the jurors were asked about Defendants' duty to disclose Teetex's profits for 2014, 2015, and 2016. (*Id.*) Thus, it is possible that the jury concluded that because the fiduciary duty questions referred to a longer period of time, it was appropriate to apportion a larger share of the total damages to that claim.

Thus, the Court finds there is a view of the case that makes the jury's answers on the special verdict form consistent. Defendants have not met their high burden of establishing an irreconcilable inconsistency in the verdict, and the Court will not invalidate the verdict on this basis. Defendants' motion for a new trial on the intentional misrepresentation and breach of fiduciary duty claim is denied.

**D.    The Record Contains Insufficient Evidence to Support the Punitive Damages Award.**

The jury awarded Plaintiff punitive damages in the amount of $53,945.00. Defendants argue the award of punitive damages must be vacated because Defendant Chen's conduct does not meet the standard for reprehensibility and because there was no evidence presented of Defendants' financial condition.

California law authorizes an award of punitive damages when a plaintiff establishes by clear and convincing evidence the defendant engaged in oppression, fraud, or malice. *Kaffaga v. Estate of Steinbeck*, 938 F.3d 1006, 1015-16 (9th Cir. 2019) (citing Cal. Civ. Code § 3294(a)). "There must be an intent to vex, annoy, or injure." *Id.* "The requisite intent to support punitive damages is malice, and it 'may be proved either expressly (by direct evidence probative on the existence of hatred or ill will) or by implication (by indirect evidence from which the jury may draw inferences).'" *Id.* (quoting *Neal v. Farmers Ins. Exch.*, 21 Cal.3d 910 n.6 (1978)). However, punitive damage awards that are excessive as a matter of law or raise a presumption of passion or prejudice are prohibited under California law. *Id.* at 1018 (quoting *Adams v. Murakami*, 54 Cal.

8

3d 105, 109-10 (1991)).

To determine whether a punitive damage award is excessive under state law, a court considers a variety of factors including the reprehensibility of the defendants' conduct, the relation between the compensatory damages awarded and the harm suffered, and the award's relation to "the wealth of the particular defendant." *Neal*, 21 Cal. 3d at 928. "A reviewing court cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of the defendant's financial condition." *Adams*, 54 Cal. 3d. at 110. That is because "the most important question is whether the amount of the punitive damages award will have deterrent effect—without being excessive." *Id.* at 111. Thus, "an award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition." *Id.* at 109. In California, "meaningful evidence" generally means some evidence of the defendant's net worth, not gross assets, supporting an award of punitive damages. *See Boyle v. Lorimar Productions, Inc.*, 13 F.3d 1357, 1361 (9th Cir. 1994) ("The rule established by lower California courts is that only net, not gross, figures are relevant."); *Kelly*, 145 Cal. App. 4th 910, 915 (2006) ("We explained that in examining assets without examining liabilities, or without 'evidence of the entire financial picture,' there was a risk of 'crippling or destroying the defendant.'") (citations omitted). It is the plaintiff's burden to present evidence of the defendant's financial condition. *Adams*, 54 Cal. 3d at 119.

The Court finds Plaintiff failed to meet his burden to present sufficient evidence of Defendant Chen's net worth. At trial, Plaintiff did not present any evidence of Chen's net worth, such as income, cash positions, expenses, or liabilities. Plaintiff, however, contends that sufficient evidence of Chen's net worth was introduced at trial by Defendants' counsel. Specifically, Plaintiff asserts that evidence of Defendants' cash flow, assets, liabilities, and ability to borrow and repay was introduced. The Court has reviewed Plaintiff's citations to the trial transcript and cannot agree that the cited testimony provides sufficient evidence of any of these factors. In the cited portions of the transcript, Chen testifies that due to his income, he would have had to pay the purchase of Teetex in installments given his income and that he drew on a home equity line of credit to pay Plaintiff's portion of the value of Teetex and would have had to pay the purchase

price of Teetex in installments given his income. The Court also notes that at trial, Plaintiff introduced evidence of a check in the amount of $53,945.00 from Defendant Chen to Plaintiff. Chen's ability to write a check of that amount suggests a certain level of assets. Thus, there is sparse evidence that could support the jury's conclusion that Chen had some assets, but Plaintiff has not provided meaningful evidence of those assets or Chen's liabilities, and the record has no evidence of Chen's net worth. On this record, the Court cannot assess whether the punitive damages award is appropriate or excessive. *Kaffaga v. Est. of Steinbeck*, 938 F.3d 1006, 1019 (9th Cir. 2019) (vacating punitive damages award where although the record contained some evidence of the defendant's financial condition, the plaintiff nevertheless failed to meet her burden to place "meaningful evidence" of financial condition and ability to pay.); *Viasphere Int'l, Inc. v. Vardanyan*, No. 5:12-cv-01536-HRL, 2017 WL 1065191, at *6 (N.D. Cal. Mar. 21, 2017) (vacating punitive damages award because there was no evidence, much less meaningful evidence, of the defendant's net worth).

      Plaintiff's opposition asserts that he was precluded from introducing evidence of Defendant's wealth directly. To the extent Plaintiff is arguing that he was not permitted a full opportunity to present evidence regarding Defendant Chen's financial condition, and thus could not meet his burden to introduce evidence of Chen's net worth, the Court disagrees. The issue of evidence of Defendant's financial condition was first brought to the Court's attention in Defendants' motion to quash Plaintiff's trial subpoenas, which sought, in part, documents related to Defendant Chen's current financial condition. (*See* Dkt. No. 171.) The Court granted Defendants' motion to quash because Plaintiff had not sought pretrial discovery of Chen's financial condition, and thus, was improperly seeking that information for the first time in a trial subpoena. (Dkt. No. 176 at 3-4.) The Court noted that because it intended to bifurcate the issue of punitive damages from the issue of liability, no evidence regarding the Defendants' financial information would be admitted until a determination on liability, and it stated that its ruling was without prejudice to Plaintiff renewing the request for financial information at such time.

      During trial, Plaintiff did not elicit testimony from Chen about his current financial condition. After the jury found liability, the Court discussed the punitive damages portion of the

trial with the parties. The Court renewed its denial of any request for Defendant Chen's financial statements based on Plaintiff's failure to request the information during discovery because Defendants would not have an opportunity to refute the documents. The Court informed the parties they would have a certain allotment of time to present argument regarding punitive damages, but that no further evidence would be allowed.

At no time during trial did Plaintiff formally renew the request for financial information, seek to compel additional evidence, request further briefing on the issue, object to the Court's ruling regarding evidence of net worth, or otherwise represent that he would be unable to meet his burden to establish evidence of Defendant's financial condition without additional evidence. Had Plaintiff raised a contemporaneous objection, the Court could have attempted to resolve the issue with counsel's input and assistance before the jury was discharged. Plaintiff did not use the procedures available to him to obtain evidence of Chen's financial condition, and on these facts, the Court cannot conclude that Plaintiff lacked a full opportunity to present his case for punitive damages.

The Court concludes that there is insufficient evidence in the record to support the award of punitive damages and thus finds the award excessive. The Court remits the award of punitive damages to the nominal amount of one dollar.[3] Defendants' motion for a new trial on punitive damages is denied on the condition that Plaintiff accepts the remittitur. If Plaintiff declines to accept the remittitur and elects a new trial on the issue of punitive damages, the Court is not included to revisit the issue of discovery of Defendants' financial condition absent a showing of extraordinarily good cause.

Because the Court finds the issue of evidence of Defendants' financial condition to be dispositive of the punitive damage issue, it will not reach the question of reprehensibility.

**E.     The Court Corrects a Mistake in the Judgment Under Rule 60(a).**

In the context of reviewing the judgment to resolve this motion, the Court has identified an

---

[3] Defendants seek to vacate the punitive damages award; however, because this is Rule 59 motion for a new trial, the Court views Defendants' argument as a request to remit the punitive damages award to zero.

11

omission in the judgment that requires correction. Federal Rule of Civil Procedure 60(a) provides that a court "may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). "The court may do so on motion or on its own, with or without notice." *Id.* These clerical errors that may be corrected under Rule 60(a) include "blunders in execution" by the court, such as computational mistakes, errors in transcribing a judgment, specifying that a dismissal was without prejudice when that is what the court intended, or other similar clarifications. *Tattersalls, Ltd. v. DeHaven*, 745 F.3d 1294, 1297-98 (9th Cir. 2014).

In determining whether a mistake may be corrected under Rule 60(a), the focus is on "'what the court *originally intended* to do.'" *Tattersalls, Ltd.,* 745 F.3d at 1297 (quoting *Blanton v. Anzalone,* 813 F.2d 1574, 1577 (9th Cir.1987.)) Rule 60(a) is not limited to "clerical" errors such as transcribing the judgment or computational mistakes. *Id.* at 1298. It also "allows a court to clarify a judgment in order to correct a failure to memorialize part of its decision, to reflect the necessary implications of its original order, to ensure that the court's purpose is fully implemented, or to permit enforcement." *Garamendi v. Henin,* 683 F.3d 1069, 1079 (9th Cir.2012) (internal quotation marks omitted). The "touchstone" of Rule 60(a) is "fidelity to the intent behind the original judgment." *Id.* at 1078.

On the verdict form, the jury found Plaintiff failed to mitigate damages in an amount of $44,347.55. However, the judgment omitted the award on the mitigation defense, and instead, a deduction in that amount was applied to the breach of contract award. The mitigation of damages defense applied to Plaintiff's tort and contract claims.[4] The intent behind the original judgment was that the mitigation of damages award would apply to Plaintiff's total award of compensatory damages. The Court's failure to so indicate on the judgment was a blunder in execution. Thus, the Court finds this error is the type envisioned by Rule 60(a). The judgment shall be amended to state that Plaintiff's total award of compensatory damages shall be offset in the amount of $44,347.55 and to reflect the correct amount of damages for the breach of contract award.

---

[4] At trial, neither party argued that the defense was limited to only the breach of contract claim nor was the jury instructed in that regard.

12

**CONCLUSION**

For the foregoing reasons, the Court HEREBY ORDERS:

1. The motion for a new trial on the breach of contract claim is CONDITIONALLY DENIED based on Plaintiff accepting a remittitur of $17,099.

2. The motion for a new trial on the punitive damages award is CONDITIONALLY DENIED based on Plaintiff accepting a remittitur of nominal damages in the amount of one dollar.

3. The motion for a new trial on the intentional misrepresentation and breach of fiduciary claims is DENIED. To the extent the jury awarded $357,761.87 in damages for the intentional misrepresentation claim and $971,316.91 in damages for the breach of fiduciary duty claim, a total of $1,329,078.78, that award stands.

4. The judgment shall be amended to reflect that the amount of $44,347.55 for mitigation of damages is to be deducted from the overall amount of compensatory damages.

5. Plaintiff shall file a notice within twenty-one (21) days stating whether he accepts or rejects the remittiturs.

**IT IS SO ORDERED.**

Dated: July 26, 2023

JEFFREY S. WHITE
United States District Judge

13